No. 19,396.

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee,* v. THE CITY OF CHANUTE et al., *Appellants.*

SYLLABUS BY THE COURT.

1. TAXATION—*Assessments for Special Improvements—Extend to Center of Block Surrounded by Streets—Railway Property Included.* Where parts of streets in the heart of a city are missing on account of the existence of railroad tracks and rights of way, it is proper for the city, for the assessment of special improvements, to consider that a city block covers the smallest unit of city property which is actually surrounded by streets, and to extend the special assessment to the center of such block, even though such assessment may thereby cover the railway property within such block.

11—95 KAN.

Railway Co. v. City of Chanute.

2. SAME—*Special Assessment—Injunction—Limitation of Actions.* Rule laid down in *Rockwell v. Junction City,* 92 Kan. 513, 141 Pac. 299, that proceedings to challenge legality of special improvements must be commenced within thirty days, followed.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed April 10, 1915. Reversed.

*S. C. Brown,* of Chanute, for the appellants; *H. P. Farrelly,* and *T. R. Evans,* both of Chanute, of counsel.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, *William D. Atkinson,* of Parsons, and *John J. Jones,* of Chanute, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal by the city of Chanute from a judgment in favor of the Atchison, Topeka & Santa Fe Railway Company, restraining the city and the county officials of Neosho county from levying and collecting special assessments for paving in the city of Chanute, and also from a judgment for the return of certain protested taxes paid thereunder. The right of way of the railroad was established in that locality in 1868, some five years before the city of Chanute was founded. In 1873 the city was platted and organized, and the platting and engineering of the city streets, lots and blocks were made to conform to the highway of the railway company. In after years Chanute developed into a city of the second class, and the paving which has occasioned these special assessments and taxation covers streets in and near the center of the business district. By reason of the existence of the railway tracks, certain streets are partially missing, and consequently the "blocks, lots and pieces of ground" of platted city territory thereabout are different from what they otherwise would be. Where streets are missing on account of the railway tracks, the city extended

the paving tax half way between the streets which do exist, and this in a few instances subjected the plaintiff's right of way property to the payment of the paving taxes.

The statute says:

"Fourth, for paving, macadamizing, curbing and guttering all streets, avenues, and alleys, and for doing all excavating and grading necessary for the same, except the squares and areas formed by the crossing of streets, avenues, and alleys, after said streets, avenues and alleys have first been brought to grade, as provided in the first subdivision of this section relating to the opening, widening and bringing to grade all streets, avenues, and alleys, the assessments shall be made for each block separately, on all lots and pieces of ground to the center of the block on either side of such street or avenue, the distance improved or to be improved, or on the lots or pieces of ground abutting on such alley, according to the assessed value of the lots or pieces of ground, without regard to the buildings or improvements thereon, which value shall be ascertained by three disinterested appraisers appointed by the mayor and council."  (Gen. Stat. 1909, § 1374.)

It is urged that since the railway property is not platted into blocks, lots and pieces of ground it is exempt from these special assessments. The exemption of unplatted territory from special improvements may be justified on the theory that while it is within the corporate limits of the city it is not yet needed for homes and business houses and could not bear the burden of special taxes. As the city develops, such tracts will be platted into blocks and lots, and special improvements adjacent to such tracks are merely deferred until there is a real need for them. But it would hardly be just to exempt railway property in the heart of the business district from its share of the burden of these special improvements. Logically its property never can and never will be subdivided into blocks and lots. Yet the railway is usually the most important business institution in its neighborhood, and the paving

of the streets surrounding the "blocks, lots and pieces of ground" within which it transacts its business is as much to its advantage as to that of any other taxpayer.

Perhaps this reasoning will harmonize *McGrew v. Kansas City,* 64 Kan. 61, 67 Pac. 438, and *Bowlus v. Iola,* 82 Kan. 774, 109 Pac. 405. If not, the older decision must give way.

What is meant by a city block has been settled by this court in *Bowlus v. Iola,* supra. It was there said:

"The question is, What constitutes a 'block' within the meaning of the statute?

"The appellants argue that since the ordinary method of platting is into lots and blocks the legislature must have had in mind a block made by platting, and hence that the designation given by the donor of the plat controls. The premise is sound enough, but the conclusion does not follow. According to all the dictionaries and the popular understanding everywhere a block is a portion of a city surrounded by streets. In common practice city plats are made to conform to this understanding, and the legislature had in mind blocks so constituted, and not tracts arbitrarily designated as blocks by the donor of a plat. This interpretation accounts for the difference between the method of assessing the cost of street improvements and the method of assessing the cost of alley improvements. An alley is a narrow way designed for the special accommodation of the property it reaches. Consequently the cost of improving an alley is laid upon the abutting lots or ground. Streets and avenues are designated for general public travel, and consequently the cost of improving them is extended to the center of the tracts bounded by such thoroughfares." (p. 776.)

Another contention of the appellants is meritorious. The three paving ordinances complained of were published July 15, 1908, February 11, 1909, and August 3, 1909, respectively. The suit to restrain the levy and collection of the special improvements under these ordinances was filed December 19, 1909. This was too late.

Section 1420 of the General Statutes of 1909, in part, reads:

"And no su't to set aside the said assessments shall be brought after the expiration of thirty days from the time the amount due on such lot liable for such assessment is ascertained."

In *Rockwell v. Junction City,* 92 Kan. 513, 141 Pac. 299, it was said:

"This limitation is valid and covers all irregularities and defects in the proceedings. It is contended that by reason of the insufficiency of the petition the mayor and council had no jurisdiction to act, and that therefore the thirty-day statute of limitation did not begin to run, but it has been often held that such defects are waived and cured by the limitation. (*Wahlgren v. Kansas City,* 42 Kan. 243, 21 Pac. 1068; *Doran v. Barnes,* 54 Kan. 238, 38 Pac. 300; *Railroad Co. v. Kansas City,* 73 Kan. 571, 85 Pac. 603.) It has been ruled that the statute applies and cuts off defenses that the improvement proceedings are void by reason of fraud or other defects. (*City of Topeka v. Gage,* 44 Kan. 87, 24 Pac. 82; *Kansas City v. McGrew,* 78 Kan. 335, 96 Pac. 484.)" (p. 515.)

(See, also, the same case on rehearing, 93 Kan. 1, 142 Pac. 268.)

We have referred above to sections 1374 and 1420 of the General Statutes of 1909 as these were the references made in the briefs. These sections have been amended by chapters 102 and 110 of the Laws of 1911 but not on the points involved herein.

It follows that the special assessments were legal, and the suit to enjoin their collection was not brought within the thirty days' statute of limitations. Both cases are reversed and remanded with instructions to dissolve the injunction, to vacate the judgment for the return of the protested taxes, and to enter judgment for defendants in both proceedings.