No. 22,873.

FRANK FIELD et al., *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF RENO COUNTY, *Appellee*.

No. 22,961.

J. L. FEGETT et al., *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF RENO COUNTY, *Appellee*.

SYLLABUS BY THE COURT.

1. HIGHWAYS—*Improvement of Country Roads—Statutes Constitutional.* The decision of *The State, ex rel., v. Raub,* 106 Kan. 196, 186 Pac. 989, involving the constitutionality of the statute providing for the improvement of country roads, following and applied.

2. SAME—*Time in Which Signers May Withdraw Names from Petition.* The limitation in the act that signers of a petition for the improvement of roads shall not be permitted to withdraw their names from the petition after the same has been filed with the board of county commissioners, prevents a withdrawal or striking of names from the petition after the prescribed time, even if they were procured by the misrepresentation of those who circulated them.

3. SAME—*Representations Made to Procure Signatures to Petition Not Fraudulent.* Representations by the solicitors of signatures as to the cost of the improvement to be made at a future time, and during a period of fluctuating and advancing prices of material, were mere expressions of opinion upon which the petitioners could not rely as grounds of fraud.

4. SAME. Nor could the petitioners rely on representations of a solicitor interested in the sale of brick, as to the cost of the road, where the petition provided that concrete or brick might be used in the improvement, since the determination of whether it should be built of concrete or brick was left to the discretion and judgment of the board of county commissioners.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed July 10, 1920. Affirmed.

Field v. Reno County.

*Carr W. Taylor,* and *John H. Connaughton,* both of Hutchinson, for the appellants.

*William H. Burnett,* county attorney, *A. C. Malloy, C. M. Williams, F. Dumont Smith,* and *W. H. White,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: These cases involve the validity of the statute providing for the improvement of country roads, and also of proceedings taken under the statute. In each of the cases the court sustained a demurrer to plaintiffs' petition, thereby upholding the validity of the statute and the proceedings taken under it, and from these rulings plaintiffs appeal.

The plaintiffs attacked the validity of the statute upon many grounds, but their contentions were fully considered, and rejected, in *The State, ex rel., v. Raub,* 106 Kan. 196, 186 Pac. 989. Having these cases in mind, which were pending when the Raub case was submitted, counsel for plaintiffs obtained permission and filed briefs as friends of the court in that case, and then earnestly contended that the statute was violative of the state and federal constitutions upon grounds that are again urged in these cases. We see no reason for disturbing the conclusions reached in that case, nor any occasion for further comment upon the questions involved.

In the Fegett appeal a question is raised that was not determined in the earlier case. In the second count of their petition, wherein plaintiffs charged that the signatures to the petition for the highway were obtained by fraudulent representations of those circulating them, they asked that their names be stricken from the petition, and, if stricken, there would be a lack of the number required by statute, and hence they prayed that the defendant board be enjoined from letting the contract or taking further steps towards the construction of the road. The allegations in more detail were to the effect that those circulating the petitions represented that the cost of the road would not exceed $22,000 per mile, of which sum the federal government would furnish $10,000 towards the construction of the road, when they knew that by reason of the price of material necessary to the construction of the road, the cost would be approximately $50,000 per mile. It was averred that these

Field v. Reno County.

representations were made to induce plaintiffs to sign the peti-
tions, and that they, relying on the representations made, at-
tached their signatures to the petition. There is a further
allegation that one Harry Tidd, who was active in procuring
the circulating and signing of the petitions, represented certain
brick manufacturers, and that he joined in the representations
that were made to the plaintiffs, knowing that the road would
cost a sum much greater than was represented, and that this
was done to create a market for brick the companies repre-
sented by him desired to sell.

It may be stated that the petitions were presented under
chapter 265, of the Laws of 1917. The board of county com-
missioners did not act upon the petition until May 9, 1918, at
which time it found the petitions to be sufficient, and the pro-
posed road was declared to be a public utility. No action was
taken by the plaintiffs to contest the validity of the proceed-
ings until this action was brought on October 1, 1919.

The sufficiency of the petition which asked that the plaintiffs'
names be stricken from the road petitions, was challenged on
the ground that a limitation in the statute barred a withdrawal
of the names of petitioners. The act under which the petitions
were filed provides that "after the filing of a petition with the
board of commissioners no signer thereon shall be permitted
to withdraw his name therefrom." (Laws 1917, ch. 265, § 1.)
This provision was amended so that a withdrawal is now per-
mitted within thirty days after the filing of the petition, if the
board has not before that time acted upon it. (Laws 1919, ch.
246, § 1; *Heidel v. Geary County,* 106 Kan. 382, 187 Pac. 866.)
The statute of 1917 was in force when the petitions herein
were filed, and by the rule of that act the right of plaintiffs to
secure a withdrawal of their names must be determined. It is
contended by plaintiffs that the statutory limitation of the right
of petitioners to have their names withdrawn or stricken from
the petition, is not a bar where there is fraud in procuring
their signatures. They say that fraud vitiates everything that
it touches, and therefore we should read into the statutory limi-
tation an exception as to matters of fraud.

Assuming for the time being that the charges alleged
amount to fraud, is the court warranted in enlarging the stat-
ute by putting this exception into it? The legislature evi-

dently anticipated that contentions might arise as to the necessity and expediency of improving highways, and that persons who had signed a petition and initiated proceedings might be induced by arguments and reasons, good and bad, advanced by contending parties, to withdraw their signatures and thereby delay or interfere with a proposed improvement, and providently prescribed the limitation upon withdrawal. Considerable time is necessarily occupied in the initiatory steps required to be taken before an improvement is begun. Much expense may be incurred in the preliminary proceedings, such as the making of surveys of the road, maps and profiles of the benefit district, plans and specifications of the improvements, estimates of the cost, alterations and widening of established roads, the establishing of those not laid out, the purchase or condemnation of additional lands that may be needed, the advertising for bids and the letting of contracts. To avoid unnecessary delay in providing an essential public utility, and to prevent the useless waste of money and effort that might result from a change of mind of petitioners, after the approval of the petition and the inauguration of the work, the legislature, in effect, said to the petitioners, if for any reason you are disposed to change your minds and ask that your names be stricken from the petition, it must be done within the prescribed time. The limitation is quite similar in purpose and effect to the special limitation prescribed in respect to challenging the regularity and legality of preliminary steps taken towards the making of improvements of city streets. There was a provision that a suit questioning the validity of an assessment or of the preliminary proceedings in such cases, could not be brought after the expiration of thirty days from the date the assessment for the improvement was ascertained. In a case where the legality of the petition of property owners was in question and the rule of the limitation was invoked, the court held that it was competent for the legislature to prescribe such a limitation, and that the act was not unconstitutional on account of the restriction as to the time when the question of invalidity could be raised. (*Wahlgren v. Kansas City,* 42 Kan. 243, 21 Pac. 1068.)

In a later case, where it was charged that members of the city council had a pecuniary interest in the contract for the

Field v. Reno County.

improvement and that there was fraud in the letting of it, the court held that the limitation applied to fraud the same as to other claims of illegality. (*City of Topeka v. Gage,* 44 Kan. 87, 24 Pac. 82.)

In another case, where the validity of the petition upon which the improvement was ordered was challenged, it was held that the limitation "applies and cuts off defenses that the improvement proceedings are void by reason of fraud or other defects." (*Rockwell v. Junction City,* 92 Kan. 513, 141 Pac. 299.)

In a petition for a rehearing of the Rockwell case, the fact that fraud had been practiced in obtaining the petitions was strongly pressed upon the attention of the court, and they contended, as is done here, that where signatures are obtained by fraud an exception should be read into the statute, but the contention was again rejected, the court saying:

"If fraud was practiced and this had been brought to the attention of the council, it would have held the petition to be invalid and have rejected it. The council, however, passed on a petition which appeared to be sufficient, and held not only that it contained a sufficient number of legal petitioners, but that it was valid and sufficient in all other respects. The legislature has provided that interested parties can not attack the sufficiency and validity of any proceding in making an assessment after the expiration of the thirty-day limitation. This limitation applies whether the defect is a slight irregularity, a lack of sufficient signers to the petition, or because of fraud in obtaining them." (*Rockwell v. Junction City,* 93 Kan. 1. 3, 142 Pac. 268.)

And in *Park Association v. City of Hutchinson,* 102 Kan. 488, 171 Pac. 2, where the limitation was under consideration, it was held that it applies to every defect in the proceedings, whether it be an irregularity or invalidity, and in support of the policy and validity of the limitation, it was said:

"The intention of the legislature was, that public improvements should not be long delayed by contests of this character, nor the assessment proceedings interrupted by belated litigation; and so, property owners who propose to challenge an assessment for any kind of defect are required to do so promptly, or not at all. The validity of such a law is beyond question." (p. 491.)

(See, also, *Railroad Co. v. Kansas City,* 73 Kan. 571, 85 Pac. 603; *Kansas City v. McGrew,* 78 Kan. 335, 96 Pac. 484; *Railway Co. v. City of Chanute,* 95 Kan. 161, 147 Pac. 836; *Arment*

*v. Dodge City,* 97 Kan. 94, 154 Pac. 219; *Wyandotte County v. Haskell,* 97 Kan. 304, 154 Pac. 1029.)

The rule declared in the cited cases is, we think, applicable to the analogous provision limiting the time in which the names of the signers may be withdrawn or stricken from road petitions.

While this view practically disposes of the case, it may not be amiss to add that the facts recited in plaintiffs' petition hardly amount to actionable fraud. The statements of those circulating the petitions as to the cost of the road were no more than representations or matters of opinion. As all know, the World War was on, and prices of road material and labor were rapidly advancing. What the prices would be when the preliminary proceedings were completed and the time of letting the contracts would be reached, no one could tell. Ordinarily no one has a right to rely on mere expressions of opinion. (*Else v. Freeman,* 72 Kan. 666, 83 Pac. 409; *Woods v. Nicholas,* 92 Kan. 258, 140 Pac. 862; *Subke v. Gonder,* 97 Kan. 414, 155 Pac. 793; *Mathews v. Hogueland,* 98 Kan. 342, 157 Pac. 1179; Note, 35 L. R. A. 436.) And a representation as to what may occur in the future or as to future values, prices or profits is mere matter of opinion. (Note, 35 L. R. A. 437; Note, 37 L. R. A. 607.) Again, the signers of the petitions had the same means of information as those who circulated them. The sources of information as to future prices and cost were equally open to both classes and, under the circumstances, neither had a right to rely on the statements of the other as to cost of construction. Likewise, the amount which the Federal government would contribute towards the construction of country roads was fixed by a public regulation available alike to everyone who chose to inquire. The signers of the petition could not shut their eyes and ears as to public laws and rules or matters of general information, and be heard to say that the facts had been unlawfully stated or withheld from them by the circulators. In *Fox v. The Allensville, Center Square, and Vevay Turnpike Co.,* 46 Ind. 31, it was claimed by plaintiff that false representations had been made to him by a solicitor for subscriptions to be used towards the building of a road, that the road would be constructed in a particular manner, which was not done, and by reason of the

false representations on which he relied he made the subscription. It was held that he had no right to rely on the representations, as the manner of construction was to be determined by directors at some future time as they might deem expedient.

Since the representations made to plaintiffs related to matters which were as much within their knowledge as of the circulators of the petitions, and as the information was equally available to them upon inquiry, they are chargeable with knowledge of all that they might have learned by inquiry, both as to prices and as to Federal aid. There are certain well-recognized exceptions to this rule, but none of them are applicable to the circumstances of this case. (Smith on the Law of Fraud, §§ 75, 126; 12 R. C. L. 380; Note, 37 L. R. A. 597.)

In respect to the allegation that Harry Tidd, who joined in soliciting petitioners, and who it is said was an agent of certain brick companies which desired to sell brick for the construction of the road, if it was ordered, it may be said that no one had any assurance that the road would be built of brick in case the improvement was made. The petition recited that it was to be constructed of concrete, or brick on a concrete base. The board of county commissioners had the authority to determine of what material the road would be constructed, and there is no hint that the commissioners were in collusion with the brick companies, no averment of their purpose to select brick as building material, and no imputation against their good faith in the matter. If the representations were made by Tidd, as we must assume, the plaintiffs had no right to rely on them, because neither Tidd nor the petitioners could know whether brick would be adopted and used in the construction.

No error was committed in sustaining the demurrer to plaintiffs' petition, and in each case the judgment of the district court is affirmed.