No. 29,882.

D. W. Schenk et al., *Appellants,* v. The City of Kansas City et al., *Appellees.*

(5 P. 2d 842.)

Opinion filed December 12, 1931.

*William E. Carson, J. E. McFadden, O. Q. Claflin, Thomas A. Pollock* and *David F. Carson,* all of Kansas City, for the appellants.

*L. S. Harvey,* city attorney, *Alton H. Skinner* and *John C. O'Brien,* assistant city attorneys, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action by taxpayers to enjoin the collection of certain special assessments made for the repaving of six blocks of Kansas avenue in Kansas City, and to enjoin the issuance of bonds to refund temporary notes which the city has already issued to pay for this street improvement.

Plaintiff's petition is not submitted for our examination, but it must have been a long one, because a summary of its contents occupies sixty pages of appellants' abstract. From it and appellants' brief we glean that in June, 1923, pursuant to a petition of property owners, the governing body of Kansas City adopted a resolution that the proposed improvement of repaving was neces-

sary. In July, 1923, the city engineer's estimates were filed, the requisite paving ordinance was enacted and published, bids invited by advertisement were received, and the contract let. On December 4, 1923, the city engineer reported the completion of the repaving (and other work done) at a cost of $53,760. On June 23, 1925, the city issued temporary notes to pay the contractor, and on September 1, 1925, an ordinance was passed levying special assessments against the lands benefited by the improvement, which included the plaintiffs' properties. The water and light department of the city bought the temporary notes, and plaintiffs alleged that to refund these notes the defendant city was about to issue bonds at the time this action was begun, December 17, 1929—some six years after the improvement was completed and four years after the temporary notes were issued to pay for it.

In their petition plaintiffs alleged many illegalities and irregularities in the proceedings pertaining to the repaving and leading up to the issue of the temporary notes and the proposed issue of bonds for their redemption: It is alleged that the property owners' petition for the repaving of the street was defective because it did not specify the width of the proposed repaving; it merely stated that the petitioners wanted it repaved "between the present curbs." The paving resolution was void because it specified that a particular kind of brick should be used on a concrete foundation. The contract for the repaving was void because the city had already exceeded the statutory annual maximum of $500,000 for improvements when this contract was let. The total bonded indebtedness of the city already exceeded the statutory maximum without including the cost of this particular project. The resolution to repave was void because it was only published for six days and one of them was Sunday. The resolution only spoke of repaving the street and said nothing concerning the necessary "curbing, recurbing or repairing of curbing or repairing of old or construction of new catch basins for sewers" incidental thereto. The title of the ordinance was defective in that it only provided for the *repaving* of the street. The paving specifications prepared by the city engineer excluded from the projected repaving "the space between the outer rails of the Kansas City Railways Company's tracks." No plans to accompany the specifications were ever made or filed, and the recital in the ordinance relating to such plans "was in fact untrue." The

specifications were likewise defective because they called for brick of specified sizes, it being alleged that no brick of any such size "was or is manufactured." The advertised notice to contractors (inviting bids) was irregular in that the governing body of the city did not order the city clerk to publish it. The engineer's estimates filed under seal were approved by the governing body without examination. In his detailed estimate the city engineer set down an item of $3,153 "for engineering and incidentals" and that all such expenses did not in fact exceed the sum of $1,000. The written contract with the contractor was not followed and he was given certain allowances not covered by his contract. The contractor who was awarded the contract and who constructed the improvement never signed the contract. After the contract was made (July 31, 1923) it was altered so as to give the contractor certain discarded brick, and that the value thereof was $5,000. The projected pavement is not yet completed—nothing yet having been done on that portion of the avenue between the outer rails of the street railway company. The contract for the improvement was illegal because the contractor never paid his occupation tax; the pretended appraisement of plaintiffs' lots and lands adjoining the avenue was unauthorized and arbitrary; the purchase of the temporary notes by the water and light department was in effect a payment and satisfaction of them by the city so that there are now no obligations incidental to this repaving project requiring an issue of bonds for their redemption. The statute (Laws 1927, ch. 92) which undertook to validate temporary notes issued by cities of the first class under R. S. 10-123 to pay for special improvements is unconstitutional because its subject matter is not clearly expressed in its title; it contains more than one subject; it is special legislation, and it is void for other reasons too numerous to mention.

Plaintiffs also alleged that in another action Philip Schuley and some of these plaintiffs recovered a judgment against defendants in an action which questioned the validity of this particular repaving project, and that such judgment was and is a conclusive and final adjudication that their respective properties were not benefited by this repavement "in excess of six-tenths of the amount of the assessments levied against them in the petition in this case described."

The foregoing is not a complete summary of all the matters

alleged in plaintiffs' petition, but it will serve to suggest the propriety of the general demurrer which defendants lodged against it.

That demurrer was sustained, and defendants appeal. In their brief plaintiffs urge many matters which the court has carefully read, but they will not require attention for the excellent reason that plaintiffs' petition showed upon its face that it was barred by the thirty-day statute of limitations. That statute, in part, reads:

"No suit to set aside the said assessments shall be brought after the expiration of thirty days from the publication of the ordinance fixing said assessments." (R. S. 12-608.)

This limitation governing the time in which actions may be brought to question the validity of tax levies and assessments to pay for public improvements has often been applied. (*Rockwell v. Junction City*, 92 Kan. 513, 141 Pac. 299; 93 Kan. 1, 142 Pac. 268; *Railway Co. v. City of Chanute*, 95 Kan. 161, 167 Pac. 836.) In *Park Association v. City of Hutchinson*, 102 Kan. 488, 171 Pac. 2, where a similar limitation was considered, it was said:

"The intention of the legislature was, that public improvements should not be long delayed by contests of this character, nor the assessment proceedings interrupted by belated litigation; and so, property owners who propose to challenge an assessment for any kind of defect are required to do so promptly, or not at all." (p. 491.)

Counsel for appellants contend, however, that the statute just quoted was repealed by the tax bill act of 1927. (Laws 1927, ch. 133; R. S. 1930 Supp. 13-1078 to 13-1089.) Conceding but not deciding that such contention is correct, the later statute similarly provides:

"No suit to set aside the said special assessments or to enjoin the making of the same shall be brought after the expiration of thirty days from the date of publication of the assessing and apportioning ordinance setting forth the amount due on each lot or piece of ground liable for such assessment or to enjoin the collection of the tax." (R. S. 1930 Supp. 13-1088.)

It is suggested, however, that the thirty-day statute of limitations was not specially pleaded, and that the general demurrer lodged against plaintiffs' petition would not raise the statute of limitations. But a general demurrer is quite sufficient to raise this legal question where, as here, the facts alleged in the petition plainly disclosed its pertinency. (*Mercantile Co. v. Rooney*, 114 Kan. 840, 842, 220 Pac. 1048 and citations.)

It is also urged that the thirty-day limitation does not apply where the taxes and assessments complained of are wholly void be-

cause of a complete want of power in the city to make them. The case of *Randall v. Arkansas City*, 114 Kan. 178, 217 Pac. 298, is cited as an instance supporting that contention. In that case, the city imposed special assessments upon plaintiffs' properties *within* Arkansas City for sewer construction *outside* the city. This court held that the assessment was void because the city had no authority to make such special assessment and levy. That case is not analogous to the one at bar. Here there can be no contention that the city had no power to repave the street. It did have power to do so; consequently any and all irregularities in the proceedings relating to the repaving and to the levies and assessments and temporary notes issued to pay for it could only be called in question in a suit of private taxpayers instituted within thirty days. And this rule applies not only to mere irregularities in proceedings pertaining to the construction of public improvements and to the provision made to pay for them, but to their possible invalidity as well. (*Park Association v. City of Hutchinson*, 102 Kan. 488, 491, 171 Pac. 2; *Field v. Reno County*, 107 Kan. 397, 401, 191 Pac. 315.)

Moreover, if there was no statute of limitations to bar plaintiffs' action it would be demurrable for laches and want of equity. The idea that taxpayers may sit idly by while public improvements are made and while the city incurs obligations to pay for them, and then after the lapse of years institute proceedings challenging the validity of such city's obligations, and the assessments and levies made to meet them, does not address itself favorably to a court of equity. Time and again this court has said that belated proceedings seeking to defeat payment for public improvements are not looked upon with favor. (*Brown v. City of Atchison*, 39 Kan. 37, 17 Pac. 465; *Ritchie v. City of Wichita*, 99 Kan. 663, 163 Pac. 176, and citations; *Getty v. City of Syracuse*, 129 Kan. 106, 108, 281 Pac. 883.)

In *City of Leavenworth v. Douglass*, 59 Kan. 416, 53 Pac. 123, it was held that where laches appears in the allegations of a petition in which injunctive relief is sought, the petition is demurrable. To the same effect was *Howe v. City of Florence*, 121 Kan. 202, 246 Pac. 510.

The judgment is affirmed.

HARVEY, J., not sitting.