Louis J. RASSE, Appellant,

v.

The CITY OF MARSHALL,
et al., Respondents.

No. WD 57082.

Missouri Court of Appeals,
Western District.

Submitted Jan. 13, 2000.

Decided April 18, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 2000.

Stephen J. Moore, Kansas City, Lawrence R. McClure, Marshall, for appellant.

Catherine P. Logan, Overland Park, KS, Stanley M. Thomas, Kansas City, for respondent.

Before JOSEPH M. ELLIS, P.J.; PAUL M. SPINDEN and THOMAS H. NEWTON, JJ.

NEWTON, Judge.

Louis J. Rasse appeals from the Order and Judgment disposing of his action for declaratory and injunctive relief against the City of Marshall and various city and county officials.[1] In his lawsuit, Mr. Rasse contested the imposition and collection of special assessments for improvements to a subdivision created under the Neighborhood Improvement District Act.[2] The principal issue on appeal is whether Mr. Rasse's challenge to the special assessments was barred by the special statute of limitation in § 67.465, RSMo 1994. Concluding that the special statute of limitation applies and finding no reversible error, we affirm the Order and Judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Formation of Neighborhood Improvement District

In May 1994, Louis Rasse petitioned the City of Marshall for creation of the Salt Fork Neighborhood Improvement District. The purpose of the petition was to provide for improvements on a 26.13 acre tract of land that Mr. Rasse owned in fee simple.

The petition proposed development of the land by constructing roadways, streets, curbs, gutters, driveway entrances, drainage works, sewers, water mains, and utility connections. The petition estimated the cost of the proposed improvements at $639,676.00. A later amendment provided for the final costs of the improvements to be made by special assessments on a per lot basis and to be payable in substantially equal annual installments over twenty years.

The City approved the project after adopting resolutions, holding public meetings, soliciting bids, securing general obligation bonds, and hiring a construction company. Construction began and the neighborhood improvement district was eventually renamed the Cypress Point Subdivision. In July 1995, Charles Tryban, the city administrator, expressed his belief that the project was near completion. Disputing that statement, Mr. Rasse advised him of numerous deficiencies in the project and complained about the timeliness and quality of the work.

On January 2, 1996, Mr. Rasse attended a city council meeting at which the ordinance making the final assessments was presented for ratification. Mr. Rasse opposed wording in the ordinance that the work had been completed according to plans and specifications. He stated that the incomplete work involved minor details and technicalities. In the ensuing discussion, Mr. Tryban noted his disagreement with Mr. Rasse about the completion of the work. Other council members related that the construction company had committed to rectify deficiencies. In spite of

1. The officials are Janet L. French, City Clerk; Charles Tryban, City Administrator; Delford R. Thompson, Saline County Collector of Revenue. Throughout this opinion the respondents will be referred to collectively as "the City."

2. A constitutional amendment approved by Missouri voters provided for creation of neighborhood improvement districts. MO. CONST. art. III, § 38(c). The implementing legislation, the Neighborhood Improvement District Act, allows cities and counties to finance public improvements through general obligation bonds. Sections 67.453 through 67.475, RSMo 1994 and Supp.1999. The landowners whose property is benefited reimburse the local authority for the improvements through payment of special assessments. *See generally Spradlin v. City of Fulton*, 924 S.W.2d 259 (Mo. banc 1996) (provides background on development and implementation of Neighborhood Improvement District Act).

Mr. Rasse's opposition, the city council enacted Ordinance No. 6929. Ordinance 6929 recited that the Salt Fork Neighborhood Improvement District Project had been completed in accordance with plans and specifications. The ordinance set the final costs of the improvements at $798,-500.00 and assessed $15,066.04 against each lot. On January 16, 1996, the city council repealed portions of Ordinance 6929 and enacted Ordinance No. 6933 which added a section allowing the property owners the option to pay the special assessments in full within thirty days of January 16, 1996 or to pay with interest in twenty annual installments. The city clerk, Janet French, mailed notice of the special assessments to Mr. Rasse on January 17, 1996. Mr. Rasse elected not to pay the special assessments in full.

Because the special assessments were not paid in full, the City divided the amount due plus interest into annual installment payments. After certification of assessment rolls to the county, those installments were added to the annual real property tax bills. Mr. Rasse's 1996 and 1997 tax bills included the first and second annual installments for the special assessments on the Salt Fork Neighborhood Improvement District. Mr. Rasse paid neither the 1996 nor the 1997 special assessment installments. To collect the 1996 and 1997 special assessment installments, the City advertised a tax sale of Mr. Rasse's land in July 1998. In response, Mr. Rasse filed the lawsuit that is the subject of this appeal.

**B. Special Assessments Dispute**

On August 19, 1998, Mr. Rasse filed his Petition for Declaratory and Injunctive Relief. In that lawsuit, Mr. Rasse contended that the special assessments against him were invalid because the construction project had not been completed according to specifications. In support, he cited § 67.463.2, RSMo 1994, that requires that the improvement be "completed in accordance with the plans and specifications" before the city computes and apportions the costs of the special assessments.

Mr. Rasse also disputed the timing of the 1996 and 1997 installment payments. As relief, Mr. Rasse sought declarations that the special assessments were invalid and injunctions prohibiting imposition or collection of the special assessments. On that same day, the trial court entered a temporary restraining order, which was extended on August 31, 1998. The TRO apparently enjoined the City from conducting the land tax sale to collect the unpaid special assessments. Although hearings were scheduled, no preliminary injunction was ever imposed.

The City initially moved to dismiss for failure to state a cause of action. It later filed a motion for summary judgment in which it maintained that Mr. Rasse's action to challenge the special assessments was barred by the special statute of limitation in § 67.465. That statute provides that no suit to set aside special assessments or to question the validity of those proceedings shall be brought after ninety days from the mailing of notice to property owners.

After the submission of numerous suggestions, briefs, and affidavits and after holding a hearing and conferences, the trial court entered its Order and Judgment on March 12, 1999. First, granting partial summary judgment for the City, the trial court found that the claim for a declaration invalidating the special assessments and the claim for an injunction prohibiting their collection were barred by special statute of limitation in § 67.465. Next, finding for Mr. Rasse, the trial court declared that City was prohibited from collecting the first installment of the special assessment in 1996; that 1997 installment was the first installment of the special assessment; that interest due on the 1997 installment would date from January 16, 1997 until it was billed; and that subsequent installments of the special assessments would be payable annually after 1997 with interest for one year on all unpaid installments to be added to each subsequent installment until paid. Finally,

the trial court issued orders dissolving the TRO, denying Mr. Rasse's Motion for Leave To File First Amended Petition, dismissing Mr. Rasse's Petition for Injunctive and Declaratory Relief with prejudice. On appeal Mr. Rasse raises issues on each of the provisions of the Order and Judgment.

### C. Motion To Dismiss the Appeal

The City moves to dismiss the appeal and for frivolous appeal damages. In its motion and in its earlier-filed brief, the City enumerates deficiencies in Mr. Rasse's brief. The City asserts that the numerous deficiencies in the statement of facts, the points relied on, and the argument violate the mandatory requirements of Rule 84.04.

The City's criticisms are well founded. The statement of facts in Mr. Rasse's brief contains a procedural history of the case without background on the controversy on appeal. The few facts provided in the argument portions are conclusory and argumentative, and they omit pertinent facts. These defects violate Rule 84.04(c) which requires a fair and concise statement of facts relevant to the questions presented and free of argument. Because of the lack of a proper statement of facts, Mr. Rasse's brief is not understandable without continuous reference to the record on appeal which exceeds 600 pages.

The points relied on in Mr. Rasse's brief consist of general, conclusory statements without specific references to the underlying facts. The subject matter of the appeal concerns special assessments and the legal basis for disposition involves a special statute of limitation. Yet no references to special assessments or to the special statute of limitation appear in the points. The points fail to identify the ruling challenged, to cite legal reasons for error, and to explain legal reasons for reversal as required by Rule 84.04(d). One point contains five loosely-related subparts with some subparts containing additional subparts. The defective points relied on have produced unorganized arguments in contravention of Rule 84.04(e).

■ These defects in Mr. Rasse's brief make appellate review difficult and delay the appellate process. When faced with a defective brief, an appellate court should not become the appellant's advocate by ferreting out facts, reconstructing points, and deciphering arguments. *See Coleman v. Gilyard,* 969 S.W.2d 271, 274 (Mo.App. W.D.1998). Although not required to do so, the City provided background and responded to Mr. Rasse's claims. This appeal involves a matter of public interest. Consequently, in the interest of justice, we will undertake appellate review. We accordingly deny the City's motion to dismiss the appeal and for frivolous appeal damages.

## II. STANDARDS OF REVIEW

■ The standard of appellate review in this court-tried case is enunciated in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976): the trial court's judgment will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate review of the partial summary judgment is essentially *de novo. ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are the same as those employed by the trial court. *Id.* Summary judgment is appropriate only when no dispute of material fact exists and when the movant is entitled to judgment as a matter of law. Rule 74.04(c)(3). Appellate review of the alleged procedural errors is governed by the abuse of discretion standard—a ruling clearly against the logic of the circumstances, so arbitrary and unreasonable as to shock the sense of justice, and lacking careful consideration. *Robin Farms, Inc. v. Beeler,* 991 S.W.2d 182, 186 (Mo.App. W.D.1999).

### III. Legal Analysis

#### A. Validity of Special Assessments: § 67.463.2 and .3

In his lawsuit, Mr. Rasse sought a declaration that the special assessments were invalid and an injunction prohibiting their collection. In support of his claim, he asserted that the City failed to comply with the Neighborhood Improvement District Act because construction of the improvement project had not been completed according to plans and specifications before adoption of the assessment ordinances.

Mr. Rasse insists that the City's failure to comply with § 67.463 in enacting the assessment ordinances invalidated the resulting special assessments. Section 67.463.2 delineates the procedure for imposition of the NID special assessments: After the construction is complete in accordance the assessment ordinance the city is to compute the final costs, to apportion those costs among the properties benefited, and to issue an ordinance imposing the NID special assessments.[3] Section 67.463.3 deals with the notice of the NID special assessments: After passage of the NID special assessment ordinance, the city clerk is to mail notice to the property owners. That notice is to include a description of the property, the amount of the special assessment, and a statement of the option to pay the special assessment in full by a specified date or to pay in annual installments.[4]

---

3. Section 67.463.2 provides: "After construction of the improvement has been completed in accordance with the plans and specifications therefor, the governing body shall compute the final costs of the improvement and apportion the costs among the property benefited by such improvement in such equitable manner as the governing body shall determine, charging each parcel of property with its proportionate share of the costs, and by resolution or ordinance, assess the final cost of the improvement or the amount of general obligation bonds issued or to be issued therefor as special assessments against the property described in the assessment roll."

4. Section 67.463.3 provides: "After the passage or adoption of the ordinance or resolu-

In his appeal of the partial summary judgment against him, Mr. Rasse insists that disputed material facts remain on the completion of the NID project and on the procedure imposing the special assessments. According to Mr. Rasse, to prevail on summary judgment, the City bore the burden of refuting the substantive claims in his petition and proving compliance with § 67.463. Next, stressing facts favorable to his position, Mr. Rasse points to his own efforts to inform the City officials about the incomplete work and to object to the assessment ordinance at the city council meeting. He also refers to the numerous affidavits from experts that support his claim that the work had not been completed in accordance with plans and specifications. In this connection, Mr. Rasse faults the trial court for not considering his counter affidavits and for impermissible fact finding. Finally, Mr. Rasse challenges the content of the notice of the special assessments and asserts the notice was insufficient to trigger the special statute of limitation.

#### B. Special Statute of Limitation: § 67.465

In enacting the Neighborhood Improvement District Act, the General Assembly sought to provide "a complete alternative to all other methods provided by law or charter" for implementing public improvements that confer benefits on individual properties. Section 67.455, RSMo

---

tion assessing the special assessments, the city clerk or county clerk shall mail a notice to each property owner within the district which sets forth a description of each parcel of real property to be assessed which is owned by such owner, the special assessment assigned to such property, and a statement that the property owner may pay such assessment in full, together with interest accrued thereon from the effective date of such ordinance or resolution, on or before a specified date determined by the effective date of the ordinance or resolution, or may pay such assessment in annual installments as provided in subsection 4 of this section."

Supp.1999. Unlike previous public improvement legislation, the NID Act includes a special statute of limitation that prohibits suits to set aside NID special assessments or to otherwise question the validity of the proceedings that are brought after ninety days from the mailing of notice to the property owners:

**67.465. Period of limitation, lawsuits**

No suit to set aside the special assessments made under sections 67.453 to 67.475 or to otherwise question the validity of the proceedings relating thereto shall be brought after the expiration of ninety days from the date of mailing of notice to property owners of the assessments required by section 67.463.

Other Missouri acts enacted after the NID Act contain similar ninety-day special statutes of limitation that preclude lawsuits to set aside special assessments or to question the validity of the proceedings. These other special statutes of limitation appear in the Community Improvement District Act in § 67.1561, RSMo Supp.1999, and in the Sewage or Storm Water Facility Improvement Act in § 249.947, RSMo Supp. 1999. Research reveals no Missouri case that discusses or deals with these special statutes of limitation.

In other jurisdictions, special statutes of limitation on challenges to special assessments are typically short.[5] Because the time bar placed on these actions is a matter of legislative prerogative, short special statutes of limitation routinely survive disputes over their validity.[6] The short time periods on actions challenging special assessments are favored because they further public policy: Cities are prejudiced if there is no specified time at which their special assessments become final. Belated challenges to special assessments threaten the integrity of municipal finances. Landowners should not sit idly while the city makes public improvements that benefit private property and while the city incurs obligations to pay for them.[7]

■ When the affirmative defense of statute of limitation is pleaded and proved, it operates to cut off the opposing party's cause of action. *Lomax v. Sewell,* 1 S.W.3d 548, 552 (Mo.App. W.D.1999). Contrary to Mr. Rasse's assertions, if the City established the special statute of limitation in fact and in law, he had no right to prove the elements of his case and could not proceed with his cause of action. A statute of limitation defense is not directed to the elements of the cause of action but to the timely filing of the claim. *See Corley v. Jacobs,* 820 S.W.2d 668, 673 (Mo. App. E.D.1991). Here, the NID special statute of limitation in § 67.465 applies to suits to set aside the NID special assess-

5. For example, other states with special statutes of limitation on special assessment contests include: Arizona (Municipal Improvement Districts)—thirty days after assessment resolution—ARIZ. REV. STAT. ANN. § 48–721(A) (West Supp.1999); Arkansas—thirty days after publication of assessment—ARK. CODE ANN. § 14–90–804 (1987); California—thirty days from adoption of assessment resolution—CAL. STREETS & HIGHWAYS CODE § 10400 (Deering 1978); Indiana (Economic Improvement Districts)—thirty days after adoption of assessment ordinance—IND. CODE ANN. § 36–7–22–13 (Michie 1995); Kansas—thirty days from publication of ordinance fixing assessments—KAN. STAT. ANN. § 12–6a11 (1991); Minnesota—thirty days after passage of assessment resolution—MINN. STAT. § 429.081 (1987); New York—thirty days after affirmance of final assessment roll—N.Y. TOWN LAW § 239 (Consol.1976); North Dakota—thirty days after adoption of resolution awarding finance warrants—N.D. CENT.CODE § 40–22–43 (1983); Oklahoma—fifteen days after publication of ordinance levying assessments—OKLA. STAT. TIT. 11, § 37–234 (1994); South Dakota—twenty days after publication of assessment roll resolution and notice—S.D. CODIFIED LAWS § 9–43–73 (Michie 1995).

6. *Allis–Chalmers v. City of Oxnard,* 105 Cal. App.3d 876, 165 Cal.Rptr. 128, 131 (1980); *see Serenko v. City of Wilton,* 593 N.W.2d 368, 372 (N.D.1999).

7. *E.g., Cherry v. Vanlahi, Inc.,* 216 Kan. 195, 531 P.2d 66, 69 (1975), *quoting Schenk v. Kansas City,* 134 Kan. 181, 5 P.2d 842, 844 (Kan.1931); *Shortridge v. Daubney,* 425 N.W.2d 840, 842 (Minn.1988), citing *Geib v. Morrison County,* 119 Minn. 261, 138 N.W. 24 (1912); *see generally* EUGENE McQUILLIN, 14 LAW OF MUNICIPAL CORPORATIONS § 38.207 (3d ed.1978).

ments or to question the validity of the proceedings. The triggering event occurs with the mailing of the notice. The limitation period expires ninety days after the notice is mailed.

The plain language of § 67.465 broadly prohibits any suit to set aside NID special assessments or to otherwise question the validity of the proceedings. Mr. Rasse's lawsuit sought a declaration invalidating the special assessments and an injunction prohibiting their collection. To prove his claim of invalidity, Mr. Rasse proposed extrinsic evidence showing that the NID project had not been completed according to the procedural requirements in § 67.463.2. Even though presented in terms of equitable relief, the claim amounts to an attempt to set aside the NID special assessments.[8] Establishing the claim of invalidity for failure to complete the work necessarily equals a questioning of the validity of the proceedings.[9] Accordingly, the matters in Mr. Rasse's lawsuit contesting the special assessments and their validity fit well within the ambit of the special statute of limitation in § 67.465.

The face of Mr. Rasse's petition for declaratory and injunctive relief establishes the triggering event and the expiration of the time period. The petition admits that the special assessments notice was mailed on January 17, 1996. The NID special statute of limitation is triggered by the mailing of notice. The limitation period expired ninety days later on April 16, 1996. The petition challenging the special assessments was file-stamped August 19, 1998,

twenty-eight months after the running of the special statute of limitation. Thus the special statute of limitation barred the portion of the lawsuit challenging the special assessments.[10]

In his response to the City's amended motion for summary judgment, Mr. Rasse admitted actual receipt of Janet French's letter containing the special assessments notice that was mailed January 17, 1996. Yet he asserts that the content of that notice was inconsistent with the requirements of § 67.463.3. Part of the challenge to the notice concerns an evidentiary dispute that arose over the assessment roll attached to the notice. A copy of that assessment roll had been attached as an exhibit to Janet French's affidavit in support of the City's motion for summary judgment, but the assessment roll was not included with the City's amended motion. At the hearing, when the City sought leave to supplement the affidavit and include the missing exhibit, Mr. Rasse's counsel acknowledged that the assessment roll had indeed been attached to the earlier motion. The trial court granted the City leave to supplement Janet French's affidavit, and Mr. Rasse never disputed receiving the assessment roll along with the notice. The remaining part of the challenge to the notice involves technical compliance and fails to implicate the running of the special statute of limitation. The record indicates that special assessments notice along with the attached assessment roll complied with § 67.463.3 by describing each parcel to be assessed, by specifying the amount of each special assessment, and by stating the op-

8. *Cf. Statser v. Oklahoma City,* 552 P.2d 404 (Okla.1976) (in which the fifteen-day special statute of limitation barred the landowners' action to enjoin collection of alleged unconscionable special assessments based on the invalidity of the city ordinance creating the sewer district).

9. Kansas' special statute of limitation in KAN. STAT. ANN. § 12–6a11 contains similar language. In *Cherry v. Vanlahi, Inc.,* 216 Kan. 195, 531 P.2d 66 (1975), the landowners filed their special assessments challenge over two years after the thirty-day limitation period.

They accused the city of illegally omitting two areas benefited by the improvements from the improvement district. The action was time-barred because the claim of illegality constituted an action to "otherwise question the validity of the proceedings" under the special statute of limitation.

10. *See, e.g., Serenko v. City of Wilton,* 593 N.W.2d 368 (N.D.1999); *Maumelle Blvd. Water and Sewer Dist. No. 1 v. Davis,* 315 Ark. 353, 868 S.W.2d 73 (1993); *Horowitz v. Board of Assessment,* 128 A.D.2d 875, 513 N.Y.S.2d 797 (1987).

tion to pay the special assessments in full within thirty days or in twenty annual installments.

Uncontested facts show that Mr. Rasse had actual notice as well as actual knowledge of the special assessment proceedings: Mr. Rasse was involved with the creation and development of the Salt Fork Neighborhood Improvement District from its inception. He petitioned the City for improvements to develop land that he owned. His plan provided for the financing of the improvements through special assessments payable in twenty annual installments on a per lot basis. He monitored the project throughout construction. He attended the city council meeting and voiced his concerns about completion of the project. He was present when the city council enacted Ordinance 6929 that formalized the special assessments by declaring that the work had been completed according to plans and specifications. He received actual notice of the imposition of the special assessments. He failed to pay the special assessments for two consecutive years. He waited until his property was scheduled to be sold at a tax sale before he challenged the special assessments. His lawsuit was filed more than two years after expiration of the limitation period.

█ Our *de novo* review indicates that the trial court appropriately applied the law in granting the partial summary judgment. The City established its affirmative defense of statute of limitation through undisputed facts and demonstrated its entitlement to judgment as a matter of law. Consequently, Mr. Rasse was precluded from maintaining the portion of his lawsuit challenging the imposition of the special assessments. Because the special statute of limitation cut off the cause of action, Mr. Rasse had no right to present evidence in support of his case. The facts concerning the completion of the NID project were, therefore, not material. The issues raised in Points I(B) and I(C) are denied.

## C. The Timing of the Installment Payments: § 67.463.4

Mr. Rasse's lawsuit included a claim challenging the timing of the 1996 and 1997 installment payments. During the summary judgment proceedings, Mr. Rasse also asserted lack of compliance with the certification requirements in § 67.463.4.[11] Certification is the process in which the city certifies the special assessment rolls to the county for inclusion of the installment payments in the real property tax bills. Although Mr. Rasse devotes numerous pages of argument to this claim, he fails to recognize that he prevailed on this matter and received favorable declaratory relief. The trial court declared that the City was prohibited from collecting the 1996 installment and that the

---

11. Section 67.463.4 is provided in its entirety with the timing and certification requirements underlined: "The special assessments shall be assessed upon the property included therein concurrent with general property taxes, and shall be payable in substantially equal annual installments for a duration stated in the ballot measure prescribed in subsection 2 of section 67.457 or in the petition prescribed in subsection 3 of section 67.457, and, if authorized, an assessment in each year thereafter levied and collected in the same manner with the proceeds thereof used solely for maintenance of the improvement, taking into account such assessments and interest thereon, as the governing body determines. *The first installment shall be payable after the first collection of general property taxes following the adoption of the assessment ordinance or resolution unless such ordinance or resolution was adopted*

*and certified too late to permit its collection at such time.* All assessments shall bear interest at such rate as the governing body determines, not to exceed the rate permitted for bonds by section 108.170, RSMo. Interest on the assessment between the effective date of the ordinance or resolution assessing the assessment and the date the first installment is payable shall be added to the first installment. The interest for one year on all unpaid installments shall be added to each subsequent installment until paid. *In the case of a special assessment by a city, all of the installments, together with the interest accrued or to accrue thereon, may be certified by the city clerk to the county clerk in one instrument at the same time. Such certification shall be good for all of the installments, and the interest thereon payable as special assessments.*"

first installment was the 1997 installment. Because this claim involves no controversy, it presents nothing for appellate review. *Bratton v. Mitchell,* 979 S.W.2d 232, 235–36 (Mo.App. W.D.1998). We, therefore, decline review of the timing claim in Point I(B).

In connection with the timing challenge, Mr. Rasse asserts that the Order and Judgment was internally inconsistent. According to Mr. Rasse, the grant of partial summary judgment on grounds of statute of limitation conflicted with the declaration prohibiting collection of the 1996 installment payment. To the contrary, by its judgment, the trial court implicitly determined the special statute of limitation in § 67.465 did not bar the claim challenging the timing of the 1996 installment. Consequently, Mr. Rasse's assertion of inconsistent judgments lacks merit. Point I(E) is denied.

**D. Claims of Procedural Errors**

■ Mr. Rasse cites numerous claims of procedural errors, none of which merit reversal on appeal. First, Mr. Rasse complains about the City's amended motion for summary judgment. He maintains that the amended motion was defective for failing to comply with Rule 74.04. His claims of defect center around the City's presentation of facts and the grounds for summary judgment. The City, however, was not required to state with particularity what elements of the petition were in dispute because it relied on the statute of limitation defense. *See Corley,* 820 S.W.2d at 673. Our ruling on the propriety of the partial summary judgment against Mr. Rasse and the trial court's award of declaratory relief in Mr. Rasse's favor dispel the claims of defect. Mr. Rasse further asserts that the amended motion for summary judgment was not authorized by Rule 74.04. Nevertheless, the City filed its amended motion for summary judgment in response to Mr. Rasse's motion to strike the original motion. The City's amended motion corrected defects alleged in the motion to strike. Mr. Rasse, in turn, filed a ninety-page response without objection. These claims are unavailing; we deny Points I(A) and I(D).

■ Mr. Rasse next asserts that the trial court abused its discretion by denying him leave to amend his petition. The proposed amended petition added Columbia Curb and Gutter, Inc. as a party defendant. Seeking money damages, the proposed amendment also included additional counts of negligence and counts of breach of contact against the City of Marshall, the officials, and the construction company. Mr. Rasse contends that amendment was warranted because leave to amend is to be freely granted, his case had been on file less than six weeks, and the amendment posed no prejudice to the City. Asserting hardship and injustice, Mr. Rasse insists that his amended motion would have allowed him to clarify the issues and to avoid the partial summary judgment and the dismissal. In spite of his assertions, Mr. Rasse demonstrates no abuse of discretion. He fails to show how the amendment would have negated the affirmative defense of statute of limitation. The partial summary judgment and dismissal of his action for declaratory relief do not preclude his filing separate actions for money damages. *Cf. Committee For Educ. Equality v. State,* 878 S.W.2d 446, 452 (Mo. banc 1994) (declaratory judgment supplements but does not supplant other remedies). Point II is denied.

In addition, Mr. Rasse contests the dismissal of the case with prejudice and the dissolution of the temporary restraining order. Mr. Rasse claims that the dismissal was erroneous because his petition invoked substantive principles of law that would allow him to recover under some possible theory. The temporary restraining order, which has not been properly made a part of the record on appeal, apparently restrained the sale of Mr. Rasse's property at the August 24, 1998 tax sale. Both rulings follow naturally from the partial summary judgment that precluded the action to challenge the validity of the special assessments. We deny Points III and IV.

Finally, for the first time in his reply brief, Mr. Rasse seeks appellate review of incidents that occurred after entry of the March 12, 1999 Order and Judgment. The incidents involve the City's compliance with the declaratory relief ordered on the timing claim. Those claims are beyond the scope of this appeal and will not be considered.

## IV. CONCLUSION

In summary, we overrule the City's motion to dismiss the appeal and for frivolous appeal damages; we affirm the partial summary judgment against Mr. Rasse on his challenge to the validity of the special assessments; we decline appellate review of Mr. Rasse's challenge to the timing of the installments for lack of controversy; we find no reversible error on Mr. Rasse's claims of procedural errors. We accordingly affirm the Order and Judgment entered on March 12, 1999.

ELLIS and SPINDEN, JJ., concur.