No. 50,468

FRIENDS UNIVERSITY, a Not for Profit Corporation, *Appellant,* v. W. R. GRACE & CO.; GAF CORPORATION; THE PENNSYLVANIA INSURANCE CO.; and COMMERCIAL UNION INSURANCE CO., *Appellees.*

(608 P.2d 936)

Opinion filed April 5, 1980.

*Kenneth P. Stewart,* of Boyer, Donaldson & Stewart, of Wichita, argued the cause, and *Martin R. Ufford,* of the same firm, was with him on the brief for the appellant.

*H. E. Jones,* of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause, and *J. Michael Kennalley,* of the same firm, was with him on the brief for the appellee, W. R. Grace & Co.

The opinion of the court was delivered by

McFARLAND, J.: This is an action brought by Friends University against the manufacturers of certain roofing materials used in the construction of the university's new library building. The roof leaked and Friends alleges the defendants are liable therefor on theories of negligence, strict liability in tort, and breach of implied warranty. The two defendant insurance companies are successive sureties on defendant GAF Corporation's bond. The district court granted summary judgment to defendants on the ground the claims were barred by the relevant statutes of limitations. Friends appeals from that judgment.

The library roof was completed in September, 1969. The general contractor for the building was the Johnson Construction Company, with the roofing subcontractor being the Buckley Roofing Company. Neither company is party to this action. The alleged defects are in the "built-up" roof, as opposed to the structural roof. The roof first leaked in 1970 or 1971 and continued to leak during virtually every rain occurring thereafter. Friends was particularly concerned with the leaks, inasmuch as the water presented a serious risk to the library contents. Complaints were initially made to the roofing company, but ultimately

the manufacturers, W. R. Grace & Co., and GAF Corporation, were also involved. The roofing company made the first repairs in 1970. On October 18, 1974, the president of Friends wrote the following letter to the architect, the general contractor, the roofing company, and GAF:

"Gentlemen:

"Re: Edmund Stanley Library on Friends University campus

"I have been very reluctant to get involved in the problems of the leaking roof on the library on this campus. However, the situation seems to be getting no better and, as President of the school, I feel it is important for me to review the situation. I have been on campus only two years, but I have heard nothing but complaints about the leaking library roof.

"It is my understanding that the building was completed and ready for use in September, 1969. Less than two years later the roof started leaking. Mr. Bushfield sent a letter under the date of April 27, 1971 to the Buckley Roofing Company (copy attached).

"Again, according to my understanding, nothing was done even though the roof leaked *almost* every time it rained. Soon after I arrived on campus in August, 1972, I became aware of the seriousness of this situation. After much pressure, Mr. Buckley wrote a letter dated January 19, 1973, to Mr. Cramer, our Business Manager (copy attached).

"We had hoped that with the completion of the work of the Buckley Company that the leaking problem would be over. Such was not the case.

"In October 1973, Ray Winchester wrote to G.A.F. Corporation (copy attached). This reply also attached. No action was forthcoming.

"Early this fall, 1974, we were faced once again with *severe* leaking problems.

"I feel that it was mandatory that we do something. Damage to thousands of books would indeed be a serious matter. Roof Mechanics, Inc. have just completed the following contract (copy attached). Again we have no guarantee that this is going to complete the job.

"Why should a college and the owner have to be the one to suffer for something that should have been right when the building was built in the first place? The college has very limited funds and it is quite a loss to have to spend this kind of money on a building that is only five years old.

"I wish, somehow, all of you people, who were involved in the building of this building, could get together to really solve the problem once and for all so that we would not have to worry constantly about the leaking roof. You can well appreciate how very frustrating this is, especially in a library.

"Any help or guidance you can give to this very troublesome matter will be greatly appreciated.

"Sincerely,
"Harold C. Cope
President"

The defendants participated in various conferences and inspections of the roof, but each consistently denied liability for the problem. In April of 1975 an independent expert was retained,

who pinpointed the cause of the problem as being the failure of the W. R. Grace Zonolite Dyzone Board to bond to the substructure, and who was of the opinion that the structure would require complete reroofing. A like problem had occurred in other structures, and in 1971 W. R. Grace had developed a special Zonolite nail which apparently resolved the bonding difficulty. The special nail must be used at the time of initial roofing or reroofing and is not suitable for partial repairs of existing roofs. The action herein was commenced on March 29, 1977, and sought recovery on theories of negligence, strict liability in tort, and breach of implied warranty—causes of actions with two and three-year statutes of limitations (K.S.A. 60-512 and 60-513). The two defendant manufacturers filed motions for summary judgment based on the relevant statutes of limitations. The district court sustained the motions, determining:

"[T]he building in question was completed in September of 1969, and that Plaintiff was aware that the roof of the library was leaking less than two years after that date. At that time, Plaintiff knew or should have known that it had suffered a substantial injury giving rise to a cause of action. This action was commenced on March 29, 1977.

"The Court finds that claims of Plaintiff against these Defendants founded upon tort, breach of implied warranty, and strict liability are barred by the Statute of Limitations. The Court further finds that conduct of Defendant, W. R. Grace & Co., did not toll the Statute of Limitations as claimed by Plaintiff."

Friends appeals from the entry of the summary judgments. Preliminarily, we note that whereas the appeal was taken from the summary judgment entered as to all three theories, the appellant's brief is devoted wholly to the negligence claim. Defendant-appellees correctly point out that this constitutes a waiver or abandonment of claims of error relative to the other theories. *Steele v. Harrison,* 220 Kan. 422, 552 P.2d 957 (1976). However, by virtue of the result we reach herein the outcome of the appeal is not altered by the waiver of the claims of error relative to the other theories.

Friends contends the statute of limitations did not commence to run until April, 1975, when the expert's report disclosed the substantial injury plaintiff had suffered. The position of Friends is that only upon receipt of such report was the severity of the problem revealed—only then did Friends ascertain the roof had wholly failed and would have to be redone in its entirety. Friends seeks to extend the two-year statute of limitations by application of K.S.A. 60-513(*b*), which provides:

"(*b*) Except as provided in subsection (*c*) of this section, the cause of action in this section shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

Friends relies heavily on *Hecht v. First National Bank & Trust Co.,* 208 Kan. 84, 490 P.2d 649 (1971), which was a medical malpractice action arising from radiation therapy administered to treat Hodgkin's disease. In *Hecht,* at 91-93, this court stated:

"The testimony of none of the parties deposed shows conclusively that the negligent acts alleged had caused substantial injury on March 13, 1966. . . .

. . . .

"We believe a fair analysis of the testimony of the three physicians deposed clearly indicates that as of March 13, 1966, none of them had made a diagnosis or prognosis of plaintiff's condition in terms of substantial injury since it was too early to do so with reference to the time of the treatments and the healing condition of plaintiff at the time. We do not believe that plaintiff's knowledge of her condition from her own observation, and that acquired from her physicians, is sufficient to justify a determination, as a matter of law, that she knew or could have reasonably ascertained on March 13, 1966, that she had suffered substantial injury caused by the alleged negligent treatment of defendants.

. . . .

"[W]here the evidence is in dispute as to when substantial injury first appears or when it becomes reasonably ascertainable, the issue is for determination by the trier of fact."

The *Hecht* case is readily distinguishable on the facts. Radiation therapy, whether or not properly done, frequently produces substantial injury to the body, which generally heals in time. A lay person cannot readily ascertain whether or not negligent treatment has been administered. Further, with a living entity, healing can occur which remedies the problem in whole or in part. The new roof was obviously defective in some respect when leaking occurred. These defendants did not advise the plaintiff that the roof would heal itself or take any action to lull plaintiff into believing the problem was less severe than it appeared. Friends' letter of October 18, 1974, above recited, clearly shows that Friends was aware of its serious problem at least as early as August, 1972.

*Miller v. Beech Aircraft Corporation,* 204 Kan. 184, 460 P.2d 535 (1969), also cited by Friends, again involves the question of

when the injury done to the plaintiff's body was reasonably ascertainable, and is easily distinguishable from the facts in the instant case. From 1970 forward, Friends was complaining about the roof and demanding that the roof problems be remedied. Friends frequently urged the defendants and the roofing company to stop arguing among themselves about whose fault it was and repair the roof. The fact Friends had not determined the exact scientific cause of the leaking did not toll the running of the statute. Fully cognizant that a severe problem existed, Friends elected to seek nonjudicial resolution of the controversy. Simply stated, Friends lost its right to a judicial determination of the dispute by its own delay and inactivity.

A rather analogous factual situation is presented in *Cooksey v. Jones,* 184 Kan. 300, 336 P.2d 422 (1959), involving refrigeration equipment in a cold storage plant. In the summer of 1953 plaintiffs were aware the equipment was not cooling properly. In February of 1957 plaintiffs brought an action based on fraudulent misrepresentation. This court stated at p. 303:

"This case now before the court seems clear in the last analysis. The facts alleged in the petition of the plaintiffs appear to affirmatively show discovery that the locker plant could not be kept cool as early as the summer of 1953. It is alleged that defendant represented that the plant was easily maintained at the proper temperature. When plaintiffs found that it was impossible to maintain the proper temperatures of the locker plant in 1953, a reasonable investigation would have shown all of the reasons therefor and plaintiffs cannot delay the running of the statute of limitations by merely alleging that they only discovered the defective machinery. This occurred more than two years prior to February, 1957, and the beginning of the plaintiffs' suit to recover the money paid on the contract. It would seem that the two year statute of limitations had run before the filing of the suit."

Friends next contends the conduct of the defendant manufacturers tolled the running of the statute of limitations. The specific conduct relied upon in support of this contention is the suggestion of defendants that an independent expert be hired to report on the roof and the offer of W. R. Grace to help pay the expert's fee. These acts were the result of Friends' October 18, 1974, letter. In support of this contention, Friends cites *Safeway Stores v. Wilson,* 190 Kan. 7, 12, 372 P.2d 551 (1962), where this court approved the following from *Rex v. Warner,* 183 Kan. 763, 771, 332 P.2d 572 (1958):

" '. . . It is a legal maxim well understood that nothing can interrupt the

running of the statute of limitations, and it is commonly stated without any qualification. Courts, however, have ingrafted upon such statutes an exception based upon estoppel. Generally speaking, actual fraud in the technical sense, bad faith, or an attempt to mislead or deceive is not essential to create such an estoppel; to invoke the doctrine, the debtor or defendant must have done something that amounted to an affirmative inducement to plaintiff to delay bringing the action.' "

The defendants herein at all times denied liability and there is no showing that their acts, individually or collectively, amounted to an affirmative inducement to Friends to delay bringing the action.

Finally, Friends contends the failure of W. R. Grace to disclose the crawling of other roofs and the development of the Zonolite nail constituted fraudulent concealment which tolled the statute of limitations. Friends argues the company knew the roof was a total failure and should have disclosed said information. This doctrine is discussed in 51 Am. Jur. 2d, Limitation of Actions § 148, pp.719-721, as follows:

"To constitute concealment of a cause of action within the general rule tolling the statute of limitations on that ground the concealment must be fraudulent or intentional and, in the absence of a fiduciary or confidential relationship, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action. There must be some actual artifice to prevent knowledge of the fact, some affirmative act of concealment, or some misrepresentation to exclude suspicion and prevent injury.

"Although mere silence or failure to disclose may not in itself constitute fraudulent concealment, any statement, word, or act which tends to the suppression of the truth renders the concealment fraudulent. In such cases, by adding to the original fraud affirmative efforts to divert, mislead, or prevent discovery, a continuing character is given to the original act which deprives it of the protection of the statute until discovery. Where some affirmative act of concealment takes place, it is not material whether the concealment was previous or subsequent to the accruing of the cause of action. The question is whether there was a design to prevent the discovery of the facts which gave rise to the action, and whether the act operated as a means of concealment.

"There can be no concealment which will prevent the running of the statute of limitations where the cause of action is known to the plaintiff or there is a presumption of such knowledge. Where the defendant does not occupy a fiduciary or confidential relationship toward the plaintiff, neither affirmative nor passive conduct of the defendant will constitute such a concealment as to prevent the running of the statute of limitations, where through reasonable diligence on his part he could have learned of the existence of his cause of action. It has accordingly been held that the party seeking to toll the statute of limitations must explain why due diligence did not lead or could not have led to discovery of the facts and the cause of action."

In the case before us a new roof on a new building was leaking. The cause had to be defective design, materials, workmanship, or some combination thereof. At any time Friends could easily have obtained an expert opinion on the precise cause or causes for the leaking roof.

We must conclude that the trial court did not err in granting summary judgment to defendants W. R. Grace & Co., and GAF Corporation on the ground the action was barred by the statute of limitations.

The judgment is affirmed.