No. 56,352

MICHAEL J. ROE, *Appellee*, v. LAURA DIEFENDORF, *Appellant*.

(689 P.2d 855)

Opinion filed October 26, 1984.

*John F. Stites*, of Stites, Hill & Wilson, of Manhattan, argued the cause and was on the brief for the appellant.

*Jeffrey Ray Elder*, of Myers & Pottroff, of Manhattan, argued the cause and *Robert L. Pottroff*, of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is a civil action by Michael J. Roe seeking recovery from Laura Diefendorf for bodily injuries from her negligence in an automobile accident.

As a preliminary matter Roe argues there are two reasons Diefendorf's statement of facts in her brief should not be accepted by the court. First, it is claimed there is improper citation to the record. Diefendorf does not identify the record as recommended, rather, she cites it according to the document name and page number. We prefer the uniform method of citation, but we accept Diefendorf's brief since the references to the record are clear and ascertainable.

Second, Roe argues Diefendorf's facts are improper because she uses deposition testimony to support her factual statements, citing *Zehring v. Wickham*, 8 Kan. App. 2d 65, 649 P.2d 1246 (1982), *rev'd on other grounds*, 232 Kan. 704 (1983). *Zehring* is not on point. It held citation to the depositions in that case was improper because the depositions were not part of the record on appeal. In the instant case, the depositions were filed with the district court and are a part of the record. Roe's objections are overruled.

The accident which forms the basis of this action occurred on November 14, 1979, on 4th Street in Clay Center. Roe claims Diefendorf negligently drove her vehicle into his motorcycle. As a result, Roe received injuries to his lower back for which he is now seeking damages.

Roe was in pain and laid off from his job for several days immediately after the accident due to his back injury. During this time, Roe was under the care of Dr. Carleton.

In February of 1981 Roe reinjured his back. He alleges he was not aware of the full extent of the injuries for which he is now seeking to recover until that time. Dr. Carleton stated he did not detect a significant injury to appellee's lower back until February of 1981.

This action was filed in Clay County district court on June 28, 1982, two and one-half years after the accident.

Dr. Wertin, a chiropractor who examined Roe in April, 1982, testified Roe told him he had experienced pain and trouble with his lower back and left hip constantly for two and one-half years since being involved in an automobile-motorcycle accident on November 14, 1979. Dr. Wertin also testified the X rays taken after the November 14, 1979 accident showed a slight decrease in the fourth lumbar disc. In the patient case history filled out for Dr. Wertin by Roe, Roe stated the ailment or injury of which he was complaining occurred two and one-half years earlier in an automobile accident. Dr. Wertin testified he believed appellee knew he was injured in the accident on November 14, 1979.

Fred Dressie, insurance agent for Diefendorf, stated he was contacted prior to October 28, 1980, by Roe seeking payment from Diefendorf's insurance company for his medical bills and injuries. On March 11, 1981, Dressie contacted Roe to inquire about the extent of his injuries. Roe stated to Fred Dressie that he had pain and suffering in his lower back and left leg as a result of the accident with Diefendorf. Prior to September 9, 1981, Dressie had been in contact with Roe's attorney about compensation for Roe's injuries.

On October 12, 1983, the trial court ruled against Diefendorf's motion for summary judgment. The court held the statute of limitations had not run in this case because Roe did not realize he had incurred substantial injury until February 1981, and that pursuant to K.S.A. 60-513(b), the statute of limitations had not

run. Diefendorf was granted an interlocutory appeal from this order of the district court on two certified issues dealing with the question of when the statute of limitations begins to run in a personal injury action under K.S.A. 60-513(b).

The applicable period of limitations is two years pursuant to K.S.A. 60-513(a). This case was filed two years and seven months after the accident occurred. Roe argues the two-year statute of limitations was tolled under K.S.A. 60-513(b) because the extent of his injuries was unknown until February 1981. K.S.A. 60-513(b) provides:

"Except as provided in subsection (c) of this section, the cause of action in this action [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

Diefendorf maintains this means the statute of limitations begins to run either when the act causing the substantial injury occurs or when the fact of injury is ascertainable by the injured party. Under either interpretation the statute of limitations in this case would have begun to run on November 14, 1979, when the accident occurred. If this construction is correct, Roe's action, which was filed on June 28, 1982, was filed out of time.

On the other hand, Roe contends K.S.A. 60-513(b) should be interpreted to mean the statute of limitations begins to run when the fact of substantial injury is known to the injured party. This requires reading the two provisions of the statute together. Such a construction requires a factual determination as to the date an injured party should have gained knowledge of the extent of injury. This was the interpretation relied upon by the trial court. Thus, appellant's motion for summary judgment was denied on the theory there was a substantial question of material fact as to the date Roe knew or should have known he was substantially injured.

To resolve the issue, let us examine the history of the statute. In 1951, we ruled tort actions accrue, not when the alleged tortious act is committed, but on the date the wrongful act caused injury. See *Kitchener v. Williams*, 171 Kan. 540, 236 P.2d 64 (1951). *Kitchener* involved an explosion in a house caused by

negligent installation and servicing of a heater. When the injury occurred, two years had long since passed from the date of the negligent installation. We have noted there can be no cause of action or reason to sue until an injury results. This is fundamental to a negligence action. Thus, the statute of limitations commences to run when the injury, resulting from the negligent act, occurs. That is the date the cause of action accrues.

The rule in *Kitchener* was codified in K.S.A. 60-513(b). See *Ruthrauff, Administratrix v. Kensinger,* 214 Kan. 185, 192, 519 P.2d 661 (1974), for our construction of the statute. We held:

"[W]e hold the period for bringing an action based on negligent tort as limited by K.S.A. 1973 Supp. 60-513 does not begin until the tortious act first causes substantial injury . . . ."

We can see the statute is broader than *Kitchener* in that it speaks of substantial injury. Roe claims the existence of his substantial injury was unknown until February, 1981, bringing him within K.S.A. 60-513(b). Diefendorf argues the negligent act and the injury occurred on November 14, 1979, and the injury was apparent to Roe at that time. Thus, the issue is whether K.S.A. 60-513(b) requires a party injured by a negligent act of another to have knowledge of the extent of the injury for the statute of limitations to commence running.

In *Brueck v. Krings,* 230 Kan. 466, 638 P.2d 904 (1982), a case involving negligence on the part of an accounting firm, we held it was knowledge of injury, not the extent of the injury, which was important to the statute of limitations question.

In *Friends University v. W. R. Grace & Co.,* 227 Kan. 559, 608 P.2d 936 (1980), we held the statute of limitations began to run on a roof repair from the time Friends complained the roof was leaking and demanded repair. Friends argued the statute of limitations did not commence until a report was completed by an expert which revealed the severity of the problem. This court held the mere fact that the exact cause of the leaking roof was not known did not toll the statute of limitations. The court stated:

"Fully cognizant that a severe problem existed, Friends elected to seek non-judicial resolution of the controversy. Simply stated, Friends lost its right to a judicial determination of the dispute by its own delay and inactivity." 227 Kan. at 563.

See also 51 Am. Jur. 2d, Limitation of Actions § 109, p. 681.

Other cases, however, seem to support appellee's contention

that it must be substantial injury, not just injury, in order for the statute of limitations to be commenced. The leading case on this is *Hecht v. First National Bank & Trust Co.*, 208 Kan. 84, 490 P.2d 649 (1971). *Hecht* was a suit for malpractice brought as a result of radiation burns received by plaintiff in X ray therapy. There was no question in *Hecht* that the plaintiff had received an injury in the form of a burn, but she believed, as did her doctors, that the injury would heal. This court held:

"We do not believe that plaintiff's knowledge of her condition from her own observation, and that acquired from her physicians, is sufficient to justify determination, as a matter of law, that she knew or could have reasonably ascertained on March 13, 1966 [two years prior to filing suit], that she had suffered substantial injury caused by the alleged negligent treatment of defendants." 208 Kan. at 92.

Thus, the statute of limitations was held not to commence until plaintiff realized the seriousness of her injury.

Initially, *Hecht* appears to depart from our statements in *Ruthrauff, Brueck* and *Friends.* This was addressed in *Friends,* where the court distinguished *Hecht:*

"The *Hecht* case is readily distinguishable on the facts. Radiation therapy, whether or not properly done, frequently produces substantial injury to the body, which generally heals in time. A lay person cannot readily ascertain whether or not negligent treatment has been administered. Further, with a living entity, healing can occur which remedies the problem in whole or in part." 227 Kan. at 562.

Our decisions are reconcilable. The rule which has developed is: The statute of limitations starts to run in a tort action at the time a negligent act causes injury if both the act and the resulting injury are reasonably ascertainable by the injured person. In *Hecht,* neither the negligent act nor the injury were ascertainable until a later date. The stated rule provides a constitutionally permissible interpretation of K.S.A. 60-513(b). We hold the use of the term "substantial injury" in the statute does not require an injured party to have knowledge of the full extent of the injury to trigger the statute of limitations. Rather, it means the victim must have sufficient ascertainable injury to justify an action for recovery of the damages, regardless of extent. An unsubstantial injury as contrasted to a substantial injury is only a difference in degree, *i.e.,* the amount of damages. That is not a legal distinction. Both are injuries from which the victim is entitled to recover damages if the injury is the fault of another. A separate classification for the two, for purposes of limiting actions thereon, is in violation of

the Equal Protection clause of the Fourteenth Amendment to the Constitution of the United States, because such classification has no legitimate legislative purpose. See *Henry v. Bauder,* 213 Kan. 751, Syl. ¶ 2, 518 P.2d 362 (1974). It is the duty of the judiciary to construe statutes in such a way, if possible, as to sustain the act's constitutionality. *State ex rel. Stephan v. Martin,* 230 Kan. 747, 641 P.2d 1011 (1982). Therefore, we construe the phrase "substantial injury" in K.S.A. 60-513(b) to mean "actionable injury."

The record in this case clearly shows the alleged negligent act and Roe's injury occurred on November 14, 1979. The injury and the act of negligence were both readily ascertainable on that date. We conclude the statute of limitations started to run on November 14, 1979, and is a bar to this action.

The judgment of the trial court is reversed and the case remanded with directions to enter summary judgment for the appellant Diefendorf.