NOT DESIGNATED FOR PUBLICATION

No. 123,486

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID L. SNODGRASS and
LESLIE J. SNODGRASS,
*Appellants*,

v.

CITY OF WICHITA, KANSAS,
*Appellee*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Opinion filed April 1, 2022. Affirmed.

*Austin K. Parker*, of Parker & Parker LLC, of Wichita, for appellants.

*Brian K. McLeod*, deputy city attorney, for appellee.


Before ATCHESON, P.J., HILL and GARDNER, JJ.


PER CURIAM: After accepting a developer's petition to finance street, sewer, and water improvements for a housing development under K.S.A. 12-6a01 et seq., the City of Wichita levied special assessments against David L. and Leslie J. Snodgrass (Appellants), and other property owners in 2004. The City issued bonds to pay for the improvements, then in 2011 issued refunding bonds to benefit from lower interest rates. But the City did not refund to property owners any of the money it saved by doing so. Appellants sued the City and individually named defendants asserting an entitlement to money based on the

1

difference between the interest rate on the original bonds in 2004 and the interest rate of refunding bonds issued in 2011.

Appellants then moved for partial summary judgment, arguing the City's failure to pass on its savings constituted a "'taking, under the guise of taxation.'" The City cross-moved for summary judgment. The district court granted summary judgment for the City, finding that the assessment was voluntary, that the alleged injury was too small to sustain a takings claim, and that the action was barred by a 30-day statute of limitations. The court dismissed Appellants' remaining claims, including those against the individually named defendants. On review, we find the district court properly dismissed Appellants' claims as untimely and properly granted summary judgment for the City.

*Factual and Procedural Background*

Ronald E. Peake petitioned the City of Wichita under K.S.A. 12-6a01 et seq. to finance street, sewer, and water improvements for a housing development—the Remington Place addition—on several lots of land he owned. The City agreed and issued general obligation bonds to fund the improvements. After publishing notice and holding a public hearing on the matter, the City levied special assessments against individual property owners within the addition to pay for the improvement bonds based on the estimated benefit incurred by each lot. Appellants bought one of Peake's lots in 2003 and started paying annual taxes for the improvements in 2004. They made their final payment in 2019.

Beginning in 2009, the City refinanced several general and special obligation bonds, including the bonds issued for the Remington Place addition, by issuing refunding bonds. In September 2011, the City issued refund bond series 2011C and 2011D—which refunded some but not all the interest maturities accrued in the relevant bond series (778 and 780). The City published notice of the refunding bonds in a newspaper on August 19,

2

2011, by providing a copy of the ordinances authorizing the issuance of the refunding bonds, Ordinances 49-068 and 49-069. But the ordinances did not describe the purpose of the bonds or state which of the City's projects the bonds applied to.

The refunding bonds allowed the City to benefit from lower interest rates and thus saved interest costs. The exact amount saved that is attributed to the Remington Place improvements or to Appellants is unclear. But the record shows that the City saved around $60.2 million by issuing more than 30 series of refunding bonds between 2009 and 2017. Appellants estimated to the district court that the City saved $8 million for the Remington Place bonds, but they admit that the amount attributable to individual properties within the Remington Place addition is around $300.

In 2018, Appellants sued the City and individual defendants. The district court dismissed Appellants' claims against some of the named defendants in April 2019. And in May 2019, the district court dismissed the remaining portion of the Appellants' petition based on a failure to prosecute their claims. But the district court later set aside its dismissal and reinstated Appellants' claims.

Appellants then moved for class certification. But shortly after doing so, they agreed to continue the matter. Appellants later filed a motion for partial summary judgment and agreed that the district court could defer ruling on the class certification issues.

Appellants' motion for partial summary judgment argued the City needed to refund to property owners the amount saved by the refunding bonds, citing *Village of Norwood v. Baker*, 172 U.S. 269, 279, 19 S. Ct. 187, 43 L. Ed. 443 (1898). Appellants also argued the City committed fraud which prevented them from learning of the refunding bonds, thus tolling the time to file a claim under the applicable statute of limitations, citing *Friends University v. W.R. Grace & Co.*, 227 Kan. 559, 564, 608 P. 2d 936 (1980).

3

The City responded and moved for summary judgment, arguing that it was not legally required to reduce any assessments after issuing the refunding bonds. The City also asked the district court to dismiss Appellants' motion based on the statute of limitations, lack of notice, and immunity. The district court held a hearing and allowed extensive arguments from both sides.

After considering the parties' arguments and written motions, the district court dismissed Appellants' state claims and claims against the individual defendants, and found their claims were barred by a 30-day statute of limitations. It also granted the City's motion for summary judgment on the remaining issues. The district court found no taking because the special assessments were "voluntary" and because Appellants failed to establish the City had taken a "substantial excess" or caused "palpable injustice," distinguishing this case from *Norwood*.

Appellants timely appeal. They do not challenge the district court's dismissal of their claims against the individual defendants but challenge its rulings about the City.

*Appellants' Claims Are Barred by the Statute of Limitations.*

The district court dismissed Appellants' claims about the City's refinancing of the assessments as time barred under K.S.A. 12-6a11's 30-day limit.

We apply a de novo standard when reviewing this issue. See *State v. Delacruz*, 307 Kan. 523, 529, 411 P.3d 1207 (2018) (statutory interpretation); *Garcia v. Ball*, 303 Kan. 560, 571, 363 P.3d 399 (2015) (question of law about statute of limitations); *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013) (summary judgment based on undisputed facts); *Wachter Management Co. v. Dexter & Chaney, Inc.,* 282 Kan. 365, 368, 144 P.3d 747 (2006) (motion to dismiss).

4

*The 30-day Statute of Limitations*

K.S.A. 12-6a11 provides:  "No suit to set aside the said assessments or otherwise question the validity of the proceedings shall be brought after the expiration of thirty (30) days from the publication of the ordinance fixing said assessments."

This short time frame for challenging the validity of assessment proceedings enjoys a long history.

> "The Legislature has provided that interested parties cannot attack the sufficiency and validity of any proceeding in making an assessment after the expiration of the 30-day limitation. This limitation applies whether the defect is a slight irregularity, a lack of sufficient signers to the petition or because of fraud in obtaining them. In any such case the action to set aside the assessment, to be effectual, must be brought within 30 days after the assessment is ascertained and fixed." *Rockwell v. Junction City*, 93 Kan. 1, 3, 142 P. 268 (1914).

See *City of Topeka v. Gage*, 44 Kan. 87, 89, 24 P. 82 (1890) (finding a prior 30-day statute "may be a harsh rule, but that fact does not furnish a reason why we should not construe the statute as it is, though it may furnish a reason why the legislature should modify it."); *Wahlgren v. City of Kansas City*, 42 Kan. 243, 246, 21 P. 1068 (1889) (rejecting claim that 30 days is an unconstitutionally short statute of limitations).

In *Schenk v. Kansas City*, 134 Kan. 181, 184, 5 P.2d 842 (1931), the court explained the legislative intent for short limitations in a similar statute which read:  "'No suit to set aside the said assessments shall be brought after the expiration of thirty days from the publication of the ordinance fixing said assessments.' Rev. St. 12-608."

> "This limitation governing the time in which actions may be brought to question the validity of tax levies and assessments to pay for public improvements has often been

5

applied. (*Rockwell v. Junction City*, 92 Kan. 513, 141 P. 299; Id., 93 Kan. 1, 142 P. 268; *Atchison, T. & S. F. R. Co. v. City of Chanute*, 95 Kan. 161, 147 P. 836.) In *Park Association v. City of Hutchinson*, 102 Kan. 488, 171 Pac. 2, where a similar limitation was considered, it was said: 'The intention of the Legislature was that public improvements should not be long delayed by contests of this character nor the assessment proceedings interrupted by belated litigation; and so property owners who propose to challenge an assessment for any kind of defect are required to do so promptly or not at all.'

  . . . .

  "Moreover, if there was no statute of limitations to bar plaintiffs' action it would be demurrable for laches and want of equity. The idea that taxpayers may sit idly by while public improvements are made and while the city incurs obligations to pay for them, and then after the lapse of years institute proceedings challenging the validity of such city's obligations, and the assessments and levies made to meet them, does not address itself favorably to a court of equity. Time and again this court has said that belated proceedings seeking to defeat payment for public improvements are not looked upon with favor." 134 Kan. at 184-85.

*Does K.S.A. 12-6a11's 30-day Statute of Limitations Apply?*

Appellants argue their claims are unrelated to the City's original assessment, so they need not comply with the 30-day statute of limitations in K.S.A. 12-6a11—theirs is not a "suit to set aside the said assessments or otherwise question the validity of the proceedings." Instead, Appellants argue that they sued soon after learning the City had issued refunding bonds for their property.

The Kansas Supreme Court examined K.S.A. 12-6a11 most recently in *Cherry v. Vanlahi, Inc.*, 216 Kan. 195, 531 P.2d 66 (1975). There, landowners filed a challenge to their special assessments over two years after that statute's 30-day period expired. The landowners argued the City of Derby had illegally omitted from an improvement district certain properties benefited by the improvements. Our Supreme Court found that the

landowners' action was time-barred because their claim was "essentially one to question the validity of proceedings under K.S.A. 1973 Supp. 12-6a01 et seq., the general improvement and assessment law." 216 Kan. at 200.

Another jurisdiction has recognized that one cause of action in a petition may challenge the validity of the proceedings, while another may not. See, e.g., *Oates v. City of Lincoln*, 93 Cal. App. 4th 25, 29, 112 Cal. Rptr. 2d 790 (2001) (noting it had affirmed trial court's finding that two causes of action that challenged validity of the pooled bond financing were barred by 60-day statute of limitations for legal challenges to bond issuances, but it had reversed trial court's finding on actions for accounting, declaratory relief, constructive trust, and constructive fraud because those claims did not challenge validity of the pooled bond issuance). That makes sense to us.

We need not parse Appellants' amended petition too closely. Appellants state that "all of [their] claims are brought in implied contract, not in tort." They chose in their amended petition to waive their claims of fraud and constructive fraud and elected to bring implied contract claims, as Kansas law permits. See, e.g., *Mackey-Woodard, Inc. v. Citizens State Bank*, 197 Kan. 536, 545-49, 419 P.2d 847 (1966).

Appellants contend that "[t]his case does not challenge the City's authority to issue refunding bonds." None of their theories seek to set aside the assessments, or to undo or change the bond refinancing, nor do they contend the ordinances were somehow illegal.

Appellants do claim the City violated K.S.A. 12-6a09(c), which requires governing bodies to levy only the amount needed for the cost of the improvement. But that statute provides a procedure for estimating the cost of a project before it begins and a remedy when that estimate is off. It states:  "If the final cost of the completed improvement is less than the maximum amount of the assessment determined under this subsection, the governing body of the city shall adjust the assessments to reflect the cost

7

of the completed improvement." K.S.A. 12-6a09(c). Appellants do not show that this statute applies here, since they make no effort to show that the final cost of their completed improvements was less than the amount they had been assessed. Rather than comparing the cost of their assessments to the benefits they received, Appellants compare only the interest rate under the original bonds to the interest rate under the refunding bonds. Appellants fail to show the City violated this statute. But even had the City done so, the remedy would be to adjust its assessments, not to invalidate them. Thus Appellants' case does not seek to "set aside the said assessments." K.S.A. 12-6a11.

So the question is whether Appellants' suit "otherwise question[s] the validity of the proceedings." K.S.A. 12-6a11. This is a closer question. We could easily view all of Appellants' theories as assuming that both the original assessment and the proceedings to issue the original and the refunding bonds are valid, see K.S.A. 2020 Supp. 12-6a36(a), K.S.A. 2020 Supp. 12-6a01(d), and as arguing that they have been damaged by those proceedings because no statute authorizes the City to pocket the excess special assessments collected from taxpayers. It is the City's burden to show that, when viewed in a light most favorable to the plaintiff, the undisputed facts establish as a matter of law that the statute of limitations prevents the plaintiff from seeking relief on the claim at issue. See *Slayden v. Sixta*, 250 Kan. 23, 26, 825 P.2d 119 (1992). Viewing the pleading and the facts in the light most favorable to Appellants, we find the City fails to show that Appellants' suit questions the validity of the assessment proceedings. So the City fails to show that K.S.A. 12-6a11 applies.

*Other Possible Claims*

But even if the 30-day limitations period does not apply, Appellants' claims are barred under other potentially applicable statutes. Although the district court did not make findings related to these other theories, we will generally affirm a district court's

8

decision if it is correct, even if the district court relied on a different reason. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015).

*Implied Contract Claims*

Appellants style their claims as "implied contracts." Implied contract claims are subject to a three-year limitations period under K.S.A. 60-512.

"A cause of action for breach of contract accrues when a contract is breached . . . irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes." *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42, *modified on other grounds* 247 Kan. 699, 803 P.2d 205 (1990). So the statute of limitations for an implied contract accrues when the implied contract is breached, even if the plaintiff does not know about the breach. Cf. *Zenda Grain & Supply Co. v. Farmland Industries, Inc.*, 20 Kan. App. 2d 728, 737, 894 P.2d 881 (1995) (so finding for breach of implied warranty claims).

> "[A] claim for breach of contract, . . . begins to accrue when the contract is breached, 'irrespective of any knowledge on the part of the plaintiff or of any actual injury it causes.' *Pizel*, 247 Kan. at 74. A fair reading of K.S.A. 60-512, which sets the statute of limitations for unwritten contract claims, reflects that it lacks any language like that found in K.S.A. 60-513(b), which delays accrual of a tort claim until substantial injury occurs and the injury is reasonably ascertainable. See *Jones v. Hyatt Insurance Agency*, 356 Md. 639, 741 A.2d 1099 (1999) (holding that statute of limitations on automobile accident victims' third-party beneficiary breach of contract claim against insurance agent for failure to procure insurance began to run when agent breached contract, not when the victims obtained a judgment against the insured)." *Dupass v. Kansas Insurance, Inc.*, No. 122,926, 2021 WL 3124150, at *7 (Kan. App. 2021), *rev. denied* 314 Kan. ___ (December 6, 2021).

Thus any breach of any implied contract occurred in 2011 when the City refinanced the bonds and published the ordinances, yet refunded no savings to

9

Appellants. Yet Appellants did not sue until 2018. Their implied contract claims are thus barred by the three-year statute of limitations in K.S.A. 60-512, absent tolling.

*No Tolling for Implied Contracts*

Unlike the negligence statute, see K.S.A. 60-513(b), the statute of limitations in K.S.A. 60-512 has no discoverability exception allowing a claim to be tolled, and this court has found no justifiable basis for creating such a provision where none exists. *Four Seasons Apartments, Ltd. v. AAA Glass Serv., Inc.*, 37 Kan. App. 2d 248, 252, 152 P.3d 101 (2007). The Legislature did provide, however, in K.S.A. 60-520(a), that payment on a debt owed as the result of a contract tolls K.S.A. 60-512's statute of limitations. See *Gorrill v. Goff*, 148 Kan. 765, 769, 84 P.2d 953 (1938). The Legislature thus codified the circumstances which would toll this three-year statute of limitations. Had the Legislature intended for a discoverability provision to toll this statute of limitations, it would have said so. Appellants fail to show that the three-year statute of limitations was tolled. Their implied contract claims are barred by that statute.

*42 U.S.C. § 1983 Claims*

The only other claim Appellants address is their takings claim. The Fifth Amendment, as incorporated against state and local governments under the Fourteenth Amendment, forbids the taking of private property for public use without just compensation. U.S. Const. amend. V. The statutory vehicle for asserting constitutional claims is 42 U.S.C. § 1983 (2018), as Appellants' petition recognizes. *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 254, 261 P.3d 943 (2011).

Section 1983 claims accruing within a particular state are governed by that state's general personal-injury statute of limitations. See *Wilson v. Garcia*, 471 U.S. 261, 275, 279, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985). Courts apply that state's designated

10

limitations period for general personal injury torts, see *Owens v. Okure*, 488 U.S. 235, 236, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989), as well as its "coordinate tolling rules," see *Board of Regents of University of N.Y. v. Tomanio*, 446 U.S. 478, 484, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980). So state law governs whether a state-determined statute of limitations for a 42 U.S.C. § 1983 plaintiff has been tolled, so long as the state tolling laws are not inconsistent with the United States Constitution and federal laws. 42 U.S.C. § 1988 (2018); *Hardin v. Straub*, 490 U.S. 536, 538-39, 109 S. Ct. 1998, 104 L. Ed. 2d 582 (1989).

In Kansas, the statute of limitations for a 42 U.S.C. § 1983 claim is the two-year statute of limitations in K.S.A. 60-513(a). *Brown v. Unified School Dist. 501, Topeka Public Schools*, 465 F.3d 1184, 1188 (10th Cir. 2006). Although Kansas law provides the limitations period for § 1983 actions, federal law controls the question of accrual. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007); *Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir. 1987). This is so, even if the court borrows a state limitations period. *Resolution Trust Corp. v. Scaletty*, 257 Kan. 348, 354, 891 P.2d 1110 (1995).

Generally, the statute of limitations under 42 U.S.C. § 1983 begins running when the facts supporting the cause of action are or should be apparent, not when the plaintiff becomes aware that those facts may support a legal cause of action. See *Wallace*, 549 U.S. at 388. And specifically, as to takings claims, under federal law a property owner has a claim for a violation of the Takings Clause "as soon as a government takes his property for public use without paying for it." *Knick v. Township of Scott*, 588 U.S. ___, 139 S. Ct. 2162, 2170, 204 L. Ed. 2d 558 (2019). That date was in 2011 when the City refinanced bonds yet did not pass along its savings to Appellants. Once a law is passed, all relevant citizens are considered to have notice of its contents. See *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85, 68 S. Ct. 1, 92 L. Ed. 10 (1947). Yet Appellants did not sue until seven years after the City published notice of the refunding bonds. Their

11

takings claim under § 1983 is thus barred by the two-year statute of limitations in K.S.A. 60-513(a)(4), absent tolling. See *Gragg v. McKune*, 28 Kan. App. 2d 256, 260-61, 16 P.3d 311 (2000).

### No 42 U.S.C. § 1983 Tolling Has Been Argued

Perhaps because appellants argue that § 1983 has no statute of limitations, they fail to argue that § 1983's statute of limitations is tolled by K.S.A. 60-513(b). Appellants do not mention that statute or argue that it applies to their takings claim. Any such argument is inadequately briefed and consequently abandoned. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

### General Tolling Arguments

Appellants do, however, generally argue that all their causes of action focus on the City's savings from issuing refunding bonds and that the statute did not start to run until they learned of that issue just weeks before filing their petition. Appellants do not state which statute of limitations applies, but cursorily argue that all limitations are tolled because of the City's fiduciary duty and because of Appellants' inability to discover their cause of action by reasonable diligence.

### Appellants Show No Fiduciary Duty

Appellants first ask us to find that the City owed them a fiduciary duty, perhaps because this would permit them to rely on constructive fraud. They incorporate by reference a brief they filed in the district court setting out law on that topic, but they do not cite the record or develop any factual argument for this claim. But incorporating another brief by reference violates the spirit, if not the letter, of our rules for appellate briefs and enables a party to evade page limits. "An appellant's brief must contain . . .

[t]he arguments and authorities relied on." Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36). A party's argument should be set out in full in an appellate brief. The fiduciary duty theory is not adequately briefed. See *Williams*, 307 Kan. at 977.

Further, our appellate courts have long held that whether a fiduciary relationship exists depends on the facts and circumstances of each case. See *Dana v. Heartland Mgmt. Co.*, 48 Kan. App. 2d 1048, 1067, 301 P.3d 772 (2013); see also *Denison State Bank v. Madeira*, 230 Kan. 684, 691, 640 P.2d 1235 (1982). This court has refused, for that reason, to give an exact definition to fiduciary relations. *In re Estate of Bennett*, 19 Kan. App. 2d 154, 167, 865 P.2d 1062 (1993). But here, the district court did not make any findings about a fiduciary duty, and Appellants did not object to the adequacy of the district court's factual findings before appealing. Because Appellants did not object, we presume the district court found all facts necessary to support its judgment. See *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017). Nor do Appellants show us any facts or record establishing a fiduciary relationship or any caselaw holding that a fiduciary relationship usually exists between a City and property owners subject to special assessments. Appellants have thus failed to show that the limitations should be tolled because of a fiduciary duty between them and the City.

*Appellants Rely on Reasonable Diligence*

Appellants also contend that they could not have discovered the existence of their cause of action by the exercise of reasonable diligence. They argue the City prevented them from learning of the refunding bonds by not providing more detail in its published notice to show what projects the refunding bonds applied to, thus tolling the time to file a claim under any statute of limitations. They assert that they could not have known about the City's acts, in the exercise of reasonable diligence, because they would have had to do the following:

- "[R]equest notice and agenda packets for each meeting of the City of Wichita City Council from the date of issuance of the original bonds to the date of refunding (nearly seven (7) years) without any announcement that the issuance of refunding bonds was a potential reality";
- "[R]ead each agenda packet for each meeting each week (these are frequently more than three hundred (300) pages in length)";
- "[I]dentify what a refunding bond is (because this is not explained in the agenda packets) and that one had been issued"; and
- "[I]dentify which groups of bonds were to be refunded with the refunding bond by issuing a Kansas Open Records request to review the refunding bond transcripts and identify whether their projects were refinanced with the refunding bonds."

Appellants assert that this procedure was effectively impossible because they are not financial professionals and none of the refunding bonds specifically mentions their projects.

But the district court found—and it is uncontroverted—that the City followed the correct procedure for issuing and notifying the public of the refunding bonds. For example, in 2004, the City spread the pending specials across all the lots in Remington Place addition, and published ordinances saying so. Appellants do not allege that the interest rate on their assessments exceeded the rate allowed by law or that the issuance of general obligation refunding bonds was beyond the authority granted to the City. The Kansas Attorney General reviewed and approved the transcript for the general obligation refunding bonds and authorized the registration of the Series 2011C bonds by the State Treasurer, and the State Treasurer registered the bonds.

Appellants do not show that the City was legally required to provide any more details about the refunding bonds than the ordinances disclosed. Under these circumstances, Appellants fail to show that the City's failure to disclose more was

14

fraudulent concealment. See *Doe v. Popravak*, 55 Kan. App. 2d 1, 14, 421 P.3d 760 (2017) (concealment must be fraudulent or intentional and, without a fiduciary or confidential relationship, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action).

The sole case Appellants cite in support is *Friends*, 227 Kan. at 564. But the issue in *Friends* was whether to apply K.S.A. 60-513(b), the statutory discoverability exception to the tort statute of limitations. In contrast, this is an implied contract/takings case, not a tort case, and Appellants have never argued that K.S.A. 60-513(b) applies.

Appellants rely on broad language in *Friends*. When analyzing the plaintiff's assertion that defendant's fraudulent concealment had tolled the statute of limitations, the Supreme Court quoted 51 Am. Jur. 2d, Limitation of Actions § 148, pp. 719-21:

> "'Where the defendant does not occupy a fiduciary or confidential relationship toward the plaintiff, neither affirmative nor passive conduct of the defendant will constitute such a concealment as to prevent the running of the statute of limitations, where through reasonable diligence on his part he could have learned of the existence of his cause of action. It has accordingly been held that the party seeking to toll the statute of limitations must explain why due diligence did not lead or could not have led to discovery of the facts and the cause of action.'" *Friends*, 227 Kan. at 564.

Appellants misconstrue this statement, made in the context of fraudulent concealment, as meaning that they may toll any statute of limitations by showing that, in due diligence, they could not have earlier discovered the facts giving rise to their cause of action. Appellants thus take a concept that is necessary for tolling under a discoverability statute—due diligence—and misconstrue it as sufficient to establish tolling for any statute of limitations. But Appellants show neither that a discovery rule applies nor that the City has fraudulently concealed any facts.

15

And *Friends'* holding contradicts Appellants' impression. The Kansas Supreme Court said that for fraudulent concealment of a cause of action to toll the statute of limitations, "'the concealment must be fraudulent or intentional and, in the absence of a fiduciary or confidential relationship, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action.'" 227 Kan. at 564 (quoting 51 Am. Jur. 2d, Limitation of Actions § 148, pp. 719-21). That the City did not give more details in its published notice to show what projects the refunding bonds applied to does not show either fraudulent concealment or an affirmative prevention of Appellants' discovery of the facts.

In short, Appellants have not borne their burden to show facts justifying the tolling of the limitations period for implied contracts or for § 1983 claims. See *Underhill v. Thompson*, 37 Kan. App. 2d 870, 875, 158 P.3d 987 (2007) (Once defendant establishes prima facie showing that claim is outside statute of limitations, plaintiff bears burden of proving facts justifying tolling of limitations period to survive summary judgment.). None of their claims are timely.

*No Tort Claims*

We find it unnecessary to address the City's alternative argument that if Appellants' claims are tort claims they should be dismissed under K.S.A. 2020 Supp. 60-212(b)(1) for Appellants' failure to comply with the 120-day notice requirement under K.S.A. 2020 Supp. 12-105b(d). Similarly, we do not reach the City's argument that if Appellants' claims are tort claims, the City is immune under K.S.A. 75-6104(f) of the Kansas Tort Claims Act. Appellants have disavowed their tort theories and are bound by that. As a result, we do not apply the rule that the statute of limitations starts to run in a tort action when the Act first causes "substantial injury." K.S.A. 60-513(b); see *Roe v. Diefendorf*, 236 Kan. 218, 222, 689 P.2d 855 (1984) (That rule means that "[t]he statute

16

of limitations starts to run in a tort action at the time a negligent act causes injury if both the act and the resulting injury are reasonably ascertainable by the injured person.").

*Did the District Court Err in Granting the City's Motion for Summary Judgment?*

The district court ultimately decided this case on cross-motions for summary judgment. We reach this issue as an alternative to our affirmance of the district court's dismissal based on the statute of limitations.

The often-repeated summary judgment rules provide:

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling [is] sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

The district court provided two grounds for granting the City's cross-motion for summary judgment:

- The special assessment was not a "taking" because it was requested and thus "voluntary"; and

17

- Appellants' alleged injury was a "mere interest rate differential," not a "substantial excess" or a "palpable injustice" under relevant precedent.

We address only the second rationale here without opinion on the first. Because the district court properly dismissed Appellants' amended petition on this basis, we need not determine whether the court also properly dismissed that petition on its alternative basis. See *Ellie v. State*, 312 Kan. 835, 840, 481 P.3d 1208 (2021).

### *Substantial Excess/Palpable Injustice*

Appellants contend that a property owner cannot be assessed any more than the special benefit incurred because that would constitute a taking of private property for public use without compensation, regardless of the amount. But *Norwood*'s holding that Appellants rely on is not that broad—it limits takings claims to those that show a "substantial excess" of cost over benefit:

> "[T]he exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation. We say 'substantial excess,' because exact equality of taxation is not always attainable; and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity, when its aid is invoked to restrain the enforcement of a special assessment." 172 U.S. at 279.

See also *Bauer v. City of Olathe*, 257 Kan. 540, 556-57, 894 P.2d 823 (1995).

Our Supreme Court has also called this concept a "palpable injustice":

> "'Ordinarily the question of the existence and extent of special benefit resulting from a public improvement for which a special assessment is made, is one of fact to be

18

determined by the administrative body authorized to act in the premises and in conclusive on the property owners and the courts. Inherent in the rule, however, is that an assessment so made must be fair, just and equitable, and if palpable injustice results courts will, under their equity powers, grant relief.'" *Bell v. City of Topeka*, 220 Kan. 405, 420, 553 P.2d 331 (1976).

The district court found Appellants' claim could not be supported by a "mere interest rate differential." But the district court did not provide an exact amount of that difference. It is uncontroverted that the City saved about $60.2 million from issuing refunding bonds, but those savings include several refunding bonds not at issue. Appellants estimate $5 million saved from the relevant refunding bonds, but that figure is unsupported and was not adopted by the district court.

Still, Appellants admitted at the motions hearing that their injury likely amounted to around $300. The City agrees with that estimate, explaining:

> "The principal amounts shown originally assessed to Appellants' property by the assessment Ordinances add to $20,553.91. The county tax record . . . shows the last principal and interest payments on three of the projects. The relative size of the principal and interest amounts allows calculation of the interest rates on these assessments through division of the final interest amount by the final principal amount for each project, revealing that the effective interest rate Appellants were paying on their assessments was approximately 3.85%. Appellants have quantified the savings they believe each assessed owner should have received from a reduction in interest rates as 'a few hundred bucks' or '300 bucks.' [Citations omitted.]"

Appellants do not argue the $300 estimate is incorrect, yet they ask us to focus on the $60.2 million and $5 million figures. But Appellants admit they are not individually entitled to that amount, and they do not represent on appeal a class of owners who might be entitled to that sum.

19

Although the district court's findings on this issue do not include an exact dollar amount, Appellants did not challenge the adequacy of these findings in the district court. See *Hill v. Farm Bureau Mutual Insurance Co.*, 263 Kan. 703, 706, 952 P.2d 1286 (1998) ("[A] litigant must object to inadequate findings of fact and conclusions of law in order to give the trial court an opportunity to correct them. In the absence of an objection, omissions in findings will not be considered on appeal."); see also K.S.A. 2020 Supp. 60-252(a) (requiring courts state controlling facts and conclusions of law); *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 402-03, 77 P.3d 130 (2003) (applying *Hill* in appeal from summary judgment). So we assume the district court made the necessary finding to support its judgment. See *Jones*, 306 Kan. at 959 (factual findings presumed sufficient to support judgment if complaining party does not object to adequacy of findings).

And whether a claimant shows an assessment created a substantial excess is a factual question which this court does not typically resolve.

> "On appeal it is not the function of the appellate court to weigh conflicting evidence, pass on the credibility of witnesses or redetermine questions of fact. The reviewing court is concerned only with the evidence which supports the trial court's findings and not with the evidence which might have supported contrary findings." *Parsons Mobile Prod., Inc. v. Remmert*, 216 Kan. 256, 259, 531 P.2d 428 (1975).

See *State v. Yazell*, 311 Kan. 625, 628, 465 P.3d 1147 (2020) (recognizing appellate fact-finding is permitted only in rare circumstances).

The district court's legal conclusion that Appellants failed to show a substantial excess is supported by our precedent. In *Bauer*, our Supreme Court found the City of Olathe had assessed the petitioners $15,689.16 more than assessed to similarly situated others, but that amount did not constitute a "substantial excess" of the benefit incurred. 257 Kan. at 557. In contrast, our Supreme Court found a substantial excess based on the disproportionate $27,000 assessed to just two properties when other properties were

assessed only $2,000. *Schulenberg v. City of Reading*, 196 Kan. 43, 49-50, 410 P.2d 324 (1966). There, petitioners made a prima facie showing that the city had assessed to them over 93% of the cost of the improvement while the other properties—which made up nearly 97% of the improvement district—paid less than 7% of the improvement costs. 196 Kan. at 44. Appellants do not invite us to compare the benefits they received to the costs the City assessed, as is typical in this kind of takings case. Rather, they ask us to consider only the benefits the City received from issuing refunding bonds. Still, the values and proportionality principles in these cases underscore that summary judgment was appropriate because Appellants failed to show a substantial excess. The $300 in interest reduction the City did not pass on to Appellants after the refunding of the bonds was 1.45% of the original cost of around $20,553. That difference does not render the original costs substantially in excess of the conferred benefit going forward.

Appellants do not point to evidence that creates a genuine issue of material fact. See *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018) (adverse party has burden to establish dispute of material fact). Appellants' claim stems from an interest rate differential, but Appellants did not show the loss of that "property" permits judicial review under *Norwood* because they did not provide prima facie evidence showing a "substantial excess." 172 U.S. at 279. The record likewise lacks evidence of a "palpable injustice." *Schulenberg*, 196 Kan. at 49; see also *Sanchez v. U.S.D. No. 469*, 50 Kan. App. 2d 1185, 1192, 339 P.3d 399 (2014) (an immaterial disputed fact should not affect summary judgment decision). Appellants thus fail to show the City exacted "the cost of a public improvement in substantial excess of the special benefits accru[ed]." *Norwood*, 172 U.S. at 279. We find no basis for reversal.

Affirmed.